[Civ. No. 2727.   First Appellate District, Division Two.—February 24, 1920.]

## C. N. BEAL, Appellant, v. F. M. SMITH et al., Respondents.

[1] CORPORATIONS—CONCEALMENT OF SECRET PROFITS BY PROMOTERS—RIGHT OF CORPORATIONS TO RECOVER.—When persons associate themselves together for the purpose of promoting the organization of a corporation whose stock and securities are to be placed upon the market for sale to the public, any unreasonable profits which such persons derive from the organization of the corporation, made possible only by concealment from those who have placed their trust in the promoters, are deemed secret profits, which the corporation or a stockholder on its behalf may sue to recover.

[2] ID.—ACTION TO RECOVER SECRET PROFITS — PARTY PLAINTIFF — PURCHASER OF TREASURY STOCK.—One who becomes a stockholder in such corporation through the transfer to him of treasury stock, without notice of the fraud of the promoters in concealing the benefits or profits acquired by them in their transactions with the corporation, is a proper party plaintiff in an action on behalf of the corporation to recover such secret profits.

[3] ID.—ACTION TO SET ASIDE FRAUDULENT TRANSACTIONS—STATUTE OF LIMITATIONS.—An action by a stockholder on behalf of the corporation and its stockholders to recover property alleged to belong to the corporation, to set aside alleged fraudulent conveyances of said property, for the cancellation of securities alleged to have been fraudulently issued, and for damages alleged to have resulted from said acts, must be brought within three years from the time the fraud was committed or knowledge thereof had by the corporation, which is, in fact, the real party in interest.

[4] ID.—KNOWLEDGE OF FACTS BY DIRECTORS AND STOCKHOLDERS—IMPUTATION OF KNOWLEDGE TO COMPANY.—Where all the directors and stockholders of the corporation either participated in or had direct knowledge of the withdrawal of the secret profits made at the time of the organization of the company, knowledge of the fraud is imputed to the company and to the stockholders as of the time of its commission.

[5] ID.—DOMINATION OF CORPORATION BY PERSON COMMITTING FRAUD—TOLLING OF STATUTE OF LIMITATIONS—SUIT BY INNOCENT STOCKHOLDER.—Where the corporation and its board of directors were wholly under the domination of those who committed the original fraud, the corporation is deemed to be in the same position as an

1. Liability of promoter to corporation or its members for secret profits, notes, 25 L. R. A. 92; 18 L. R. A. (N. S.) 1110.

incompetent person or a minor without legal capacity either to know or to act in relation to the fraud so committed, and during such period of incapacity the statute of limitations does not run, at least against an innocent stockholder who was without knowledge of the fraud. Such a stockholder suing on behalf of the corporation is in the position of a guardian *ad litem*.

[6] ID.—INNOCENT STOCKHOLDER WITHOUT KNOWLEDGE OF FRAUD — TIME FOR ACTION.—Where the corporation and all the stockholders have knowledge of the fraud, or of facts sufficient to put a prudent man on inquiry, the action is barred if not commenced within three years from the discovery of such facts; but when any one stockholder, at least, if he became a stockholder before the statute had made a complete bar as to the entire corporation, is without knowledge of such facts, he may commence such an action within three years from his discovery.

[7] ID.—DISCOVERY OF FRAUD—PLEADING—EQUITY.—In such an action it is not sufficient for a party merely to allege that he did not make the discovery before a certain time. The facts upon which the fraud is based must be alleged, and when from the whole complaint it appears that discovery was actually made more than three years before the action was commenced or that plaintiff had knowledge of sufficient facts to put a prudent man on inquiry, the trial court may properly deny equitable relief, notwithstanding plaintiff's allegation that he did not discover the fraud until within the statutory period.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fabius M. Clarke and Tirey L. Ford for Appellant.

McWilliams & Hatfield, Morrison, Dunne & Brobeck, McKee & Tasheira, R. P. Henshall, H. W. Clark and Lilienthal, McKinstry & Raymond for Respondents.

NOURSE, J.—On February 24, 1916, plaintiff as a stockholder in the United Properties Company, commenced this action on behalf of the company and its stockholders to recover from certain defendants property alleged to belong to the corporation, to set aside alleged fraudulent conveyances of said properties, for the cancellation of securities alleged to have been fraudulently issued, for damages, and other in-

cidental relief. The company was joined as a party defendant because it refused to institute the action after demand. The defendants demurred separately to the complaint upon both general and special grounds. The several demurrers were sustained without leave to amend, and thereupon judgment was entered in favor of the defendants.

It is alleged in the amended complaint that on the twenty-fifth day of October, 1910, the defendants Smith and Tevis, who owned or controlled more than three-fourths of the issued capital stock of the San Francisco, Oakland & San Jose Consolidated Railway, Oakland Traction Company, Bay Cities Water Company, and other corporations designated in the complaint as "going companies," entered into an agreement for the incorporation of the United Properties Company upon a capitalization of two hundred million dollars to take over and control their interests in the said "going companies." In December, 1910, the United Properties Company was incorporated by the defendants Smith, Tevis, and Hanford, the latter, it is alleged, having been brought in as a partner of Tevis. The organization of the company was controlled by these three, who continued to designate and control the directors and officers during the time when the acts complained of were done. Immediately after the organization of the company, Tevis and Hanford turned over to it all the stocks of the companies owned or controlled by them which were agreed to be delivered under the agreement of October 25, 1910, and received therefor securities issued by the United Properties Company on the basis of exchange provided in said agreement. Smith also received his full allotment of securities of the United Properties Company on the same basis of exchange, but failed to deliver a considerable portion of the securities theretofore held by him and included in the promotion agreement and which it was said were covered by pledges as security for money borrowed by him.

In addition to the securities in these "going companies" which were turned over by the individual defendants, the agreement of October, 1910, called for the transfer of securities of the United Properties Company to Smith and Tevis in exchange for the stocks of four other corporations, which are designated in the complaint and referred to throughout the briefs as the "fraudulent companies," the reason for

this being that they had not been incorporated at the time of the agreement and that, though subsequently incorporated, they never owned any property or had any assets of any nature. However, for the purpose of carrying out the agreement of October, 1910, four companies were organized under the names of Consolidated California Land Company, Sacramento Short Line, San Jose Short Line, and Santa Clara Land & Water Company. The San Jose Short Line was incorporated for eight million dollars; the other three for ten million dollars each. The entire capital stock of all four corporations was issued to defendants Smith, Tevis and Hanford. Then another corporation, designated the Pacific Terminal Company, was incorporated for five million dollars. Its entire capital stock was likewise issued to defendants Smith, Tevis, and Hanford. Then these defendants turned the entire capital stock of these five companies, amounting to forty-three million dollars on paper, into the treasury of the United Properties Company and received in payment therefor stocks of that company amounting to over sixty-one million dollars and convertible debentures amounting to over thirty-one million dollars, by reason of which it is alleged the three defendants named fraudulently received secret profits from the United Properties Company while acting in the capacity of promoters thereof, and that these secret profits and fraudulent acts, as well as the fact that none of the five fraudulent companies had any assets, were concealed from all subsequent stockholders thereof until the same was discovered by plaintiff some time in the year 1913.

It is then alleged that immediately following the organization of the United Properties Company the three defendants named had issued to themselves, six million dollars of bond certificates of that company in consideration for an option which it was pretended the defendant Tevis held for the purchase of certain other stocks or property of the "going companies," while as a matter of fact no such option existed. It is, therefore, alleged that this issue of six million dollars of certificates was a fraud upon the company, being wholly without consideration to the company, and, like the exchange for the stocks in the "fraudulent companies," constituted secret profits abstracted by the promoters and concealed from the subsequent stockholders. The stocks and securities comprising this total of secret profits, amounting to over ninety-

nine million dollars, plaintiff prays to be delivered up to the United Properties Company and canceled.

Upon the theory that the defendants Smith, Tevis, and Hanford had entered into a general conspiracy to defraud the United Properties Company and its stockholders, it is alleged that the three named defendants, while still having full control over the affairs of the company, permitted the defendant Smith to delay the delivery of a portion of the certificates of stocks in the "going companies" which he had agreed to transfer to the United Properties Company, and for which he had been paid by that company. In May, 1913, defendant Smith, it is alleged, transferred all his interest in said pledged stocks to the Mercantile Trust Company, as trustee for the benefit of himself, his family and his creditors. And it is alleged that the Mercantile Trust Company received said stocks, not as an innocent *bona fide* purchaser, but as a voluntary grantee with notice. Then, it is alleged, these stocks, though pledged, were exchanged by Smith for shares of the San Francisco-Oakland Terminal Railways, a new corporation organized for the consolidation of three of the "going companies."

The Oakland Railways was incorporated by the defendants Smith, Tevis, and Hanford for the purpose of holding and owning corporation stocks and securities acquired by the United Properties Company, which, in turn, owned all the stock in the Oakland Railways. On May 5, 1913, defendants Smith, Tevis, and Hanford conveyed all their stock in the United Properties Company to five trustees, who were empowered to control the board of directors of said company and all its constituent corporations. The three defendants named, having full control of the United Properties Company, caused it to join in this conveyance and consent to its terms. Thereafter and on January 16, 1914, these trustees, acting for the United Properties Company and the respective boards of directors of the constituent companies named by said trustees, together with the Realty Syndicate, the Mercantile Trust Company, and the trustees of the five fraudulent companies heretofore mentioned—which had, however, been dissolved in the meantime—executed an agreement, the principal features of which are as follows:

Defendant Smith took back all of the stocks theretofore delivered by him to the United Properties Company and re-

ceived a release of his obligation to deliver the remainder of the stocks of the "going companies" which were held in pledge at the time of the agreement of October, 1910. He delivered to the Oakland Railways all the stocks and securities issued to him by the United Properties Company except the bonding certificates received by him for the fraudulent option. In addition to taking back all the stocks which he had delivered to the United Properties Company, he took other securities owned by this company of the par value of something over four million dollars. As a part of the same agreement he conveyed to the Hanford Investment Company, for the benefit of Tevis and Hanford, his portion of the six million dollar bond certificates which he had received for the fraudulent option. By this transaction the stocks and securities of the United Properties Company which Smith had received under the contract of October, 1910, were left outstanding in the hands of the Oakland Railways, and the United Properties Company received no consideration for the transfer of its assets. It is then alleged that through these transactions the defendants Smith, Tevis, and Hanford took from the United Properties Company all its assets except the securities of the Bay Cities Water Company, the United Light & Power Company, and the Sierra Water Supply Company, and that they left the interest of the United Properties Company in these three concerns encumbered to the extent of over eleven million dollars, in addition to the six million dollar bond certificates which were issued to the three defendants on account of the said fraudulent option, making a total of over seventeen million dollars, which rendered the United Properties Company insolvent and destroyed all value of the shares of its stock and outstanding securities.

Through the agreement of January 16, 1914, it is alleged a portion of the assets of the United Properties Company then held by the Oakland Railways, consisting of stocks in the "going companies" which Smith had delivered under the agreement of October, 1910, was conveyed to the Realty Syndicate, which in turn delivered to the Oakland Railways other securities of the United Properties Company which had originally been issued to defendant Smith. It is then alleged that in February, 1914, the Realty Syndicate conveyed all the property so acquired by it to the Realty Syn-

dicate Company, which shortly thereafter received a deed from the Realty Syndicate for all property of the United Properties Company received by the Realty syndicate through that agreement.

The Anglo-California Trust Company is joined as a party defendant upon the allegation that it makes some claim against some or all the properties which are involved in the suit.

The prayer of the complaint is that the defendants be required to deliver to the United Properties Company the stock which Smith agreed and failed to deliver; for the return to the United Properties Company of the property conveyed away from it on January 16, 1914; that the Mercantile Trust Company, in addition thereto, be required to surrender to the United Properties Company the stock held by it in trust; for the surrender and cancellation of the $99,500,-928.50 of fraudulently issued stocks, bond certificates, and convertible debentures; and for damages against certain of the defendants in the sum of five million dollars.

The complaint contains a statement of facts relating to the secret profits taken by the defendants Smith, Tevis, and Hanford at the time of the organization of the company which, if properly pleaded, would constitute a good cause of action for the cancellation of the securities so alleged to have been fraudulently issued. In such an action these defendants and all other persons who hold or claim any interest in the securities so issued would be proper parties. It is argued on behalf of respondents that, inasmuch as Smith, Tevis, and Hanford were the only stockholders of the United Properties Company at the time the issue of these securities was made, they cannot be treated as secret profits. In other words, the argument is that, inasmuch as those who participated in the transactions complained of alone constituted the corporation at the time, the corporation itself must be deemed to have assented to the transactions and that a subsequent purchaser of stock cannot sue on behalf of the corporation to recover from the incorporators the profits so made. In support of the argument *Turner* v. *Markham,* 155 Cal. 562, [102 Pac. 272], *Sargent* v. *Palace Cafe Co.,* 175 Cal. 737, [167 Pac. 146], *Old Dominion etc. Co.,* v. *Lewisohn,* 210 U. S. 206, [52 L. Ed. 1025, 28 Sup. Ct. Rep. 634, see, also, Rose's U. S. Notes], are cited as authority. It would serve no purpose to analyze the cases cited. It is sufficient to say that

they are not applicable to a case such as this, where the parties participating in the fraud are promoters of a corporation organized for the purpose of bringing in other stockholders and of placing its stocks and securities upon the market for sale to the public. A promoter occupies a fiduciary relation to the corporation and to its stockholders, and persons acting in that capacity cannot profit to the detriment of their stockholders without a full and fair disclosure. (*Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185, 194, [135 Pac. 496].) **[1]** Thus, when persons associate themselves together for the purpose of promoting the organization of a corporation whose stock and securities are to be placed upon the market for sale to the public, any unreasonable profits which such persons derive from the organization of the corporation, made possible only by concealment from those who have placed their trust in the promoters, are deemed secret profits, which the corporation or a stockholder on its behalf may sue to recover. (*Bigelow* v. *Old Dominion etc. Co.,* 74 N. J. Eq. 457, 496, [71 Atl. 153];' *Old Dominion etc. Co.* v. *Bigelow,* 203 Mass. 159, [40 L. R. A. (N. S.) 314, 89 N. E. 204]; *Pietsch* v. *Milbrath,* 123 Wis. 647, [107 Am. St. Rep. 1017, 68 L. R. A. 945, 101 N. W. 388, 102 N. W. 342]; *Arnold* v. *Searing,* 78 N. J. Eq. 146, [78 Atl. 762].) There can be no doubt that the rule pronounced in the Old Dominion case by the United States supreme court is not followed in this state where the profits have been procured by promoters of a corporation organized for the purpose of bringing in future stockholders and offering its stock and securities for sale to the public and the new stockholders have become such through faith in the promoters. The rule as to profits procured under such circumstances is clearly stated in *California-Calaveras Min. Co.* v. *Walls,* 170 Cal. 285, 298, [149 Pac. 595, 600], where the supreme court say: ''When in the promotion of a corporation to take over property for the benefit of the corporation it is contemplated by those organizing it that shares of its stock shall be offered for sale in order that others may become future stockholders in the corporation, such promoters in dealing with the corporation occupy a fiduciary relation to it for the benefit of such future stockholders, and the interests of such future stockholders are entitled to protection from concealed benefits or profits acquired by the promoters in their transactions with the corporation and to

a full disclosure of the true facts of the purchase price of the property turned over to the corporation and any advantage or benefits accruing to the promoters by failure to do so or concealment constitutes a fraud on the corporation."

[2] Plaintiff became a stockholder in the United Properties Company through the transfer to him of stock of that company from its treasury without notice of the fraud. He is, therefore, a proper party plaintiff in this kind of an action.

[3] But his action is plainly one of fraud, and relief from fraud of this nature must be sought within three years from the time it was committed or knowledge thereof had by the corporation, which is, in fact, the real party in interest. [4] Where all the directors and stockholders of the corporation either participated in or had direct knowledge of the withdrawal of the secret profits made at the time of the organization of the company, knowledge of the fraud is imputed to the company and to the stockholders as of the time of its commission. [5] But where, as alleged here, the corporation and its board of directors were wholly under the domination of those who committed the original fraud the corporation is deemed to be in the same position as an incompetent person or a minor without legal capacity either to know or to act in relation to the fraud so committed, and during such period of incapacity the statute of limitations does not run, at least, against an innocent stockholder who was without knowledge of the fraud. (*Whitten* v. *Dabney,* 171 Cal. 621, [154 Pac. 312].) Such a stockholder suing on behalf of the corporation is in the position of a guardian *ad litem.* The time for beginning the action is governed by the provisions of section 338, subdivision 4, of the Code of Civil Procedure, which limits it to three years from the discovery of the facts constituting the fraud. [6] Where the corporation and *all* the stockholders have knowledge of the fraud, or of facts sufficient to put a prudent man on inquiry, the action is barred if not commenced within three years from the *discovery* of such facts. When any one stockholder, at least, if he became a stockholder before the statute had made a complete bar as to the entire corporation, is without knowledge of such facts, he may commence such an action within three years from his discovery. The word "discovery" is here used as embracing not only knowledge of the facts constituting the fraud but knowledge of such facts as would put a prudent man on inquiry.

Without detailing the various events upon which plaintiff bases his discovery of the frauds, it is sufficient to say that plaintiff became a stockholder in the United Properties Company in April, 1911, through the exchange of stocks of certain of the subsidiary companies which, it is alleged, were controlled by Hanford and turned into the merger in February, 1911, as a part of the general conspiracy to defraud. From that time until March 4, 1913, he dealt with these "conspirators" without protest, though in October, 1912, he had become suspicious and started a personal investigation of the books and business transactions of the company. On March 4, 1913, he filed an elaborate protest with the company, complaining of Smith's failure to meet the terms of the premerger agreement and demanding that the company commence proceedings to enforce that agreement. Therein he displayed a very intimate knowledge of the transactions which he now alleges were fraudulent. Nevertheless, he was content to participate in these frauds so long as they seemed beneficial to him. This action was commenced February 24, 1916. Thus, if the discovery had been made eight days before the protest of March 4, 1913, had been filed, the action would have been barred. [7] It is not sufficient for a party merely to allege that he did not make the discovery before a certain time. The facts upon which the fraud is based must be alleged, and when from the whole complaint it appears that discovery was actually made more than three years before the action was commenced or that plaintiff had knowledge of sufficient facts to put a prudent man on inquiry, the trial court may properly deny equitable relief, notwithstanding plaintiff's allegations that he did not discover the fraud until within the statutory period. (*Lady Washington Cons. Co.* v. *Wood,* 113 Cal. 482, 486, [45 Pac. 809]; *Del Campo* v. *Camarillo,* 154 Cal. 647, 657, [98 Pac. 1049].)

Now, outside the general conspiracy to defraud, the main overt act of fraud is alleged to be the taking of over ninety-nine million dollars in secret profits in the latter part of 1910. The fraud of this transaction consists mainly in the fact that these securities were issued in exchange for dummy and worthless stocks. But any prudent man willing to expose the fraud could have made the discovery with little difficulty, and the very fact that such a large issue of securities was made in exchange for stocks of unknown com-

panies was sufficient to put a prudent man on inquiry. For these reasons the complaint fails to show the diligence essential to entitle plaintiff to relief in a court of equity.

Plaintiff also seeks relief from the alleged dissipation of the assets of the company resulting from the agreement of January 16, 1914. Generally, the allegations on this issue are that Smith took from the treasury of the United Properties Company all the stocks which he had theretofore delivered to it or their equivalent in the consolidated company, the San Francisco-Oakland Terminal Railways, and received a release of his obligation to deliver the remainder of the stocks agreed by him to be delivered under the promotion contract of October, 1910. In return it is alleged he conveyed to the Oakland Railways, a holding company merely, a portion of the stocks and securities which he had previously received from the United Properties Company, the greater part of which were fraudulently issued to him in payment for the stocks of the five fraudulent companies. As a part of the same transaction it is alleged Smith conveyed to the Hanford Investment Company, for the benefit of Tevis and Hanford, three million six hundred thousand dollars of bond certificates of the United Properties Company. The theory of this portion of the complaint is that the United Properties Company was thus prevailed upon to dispose of a large portion of its valuable assets, for which it received no compensation other than the transfer of stocks and securities of the United Properties Company to the Oakland Railways, all the stock of which was held by the former company. But the exhibits clearly indicate that the agreement of January 16, 1914, was a compromise between the United Properties Company, an insolvent concern, with some of its creditors. The company joined in the agreement and apparently accepted the benefits. No protest was made by any other creditor, and plaintiff does not sue in that capacity. The company, of course, cannot both affirm and repudiate that agreement. If it affirms it, plaintiff has no cause of action. If it repudiates it, it must restore the benefits. But this has not been and, apparently, cannot be done.

Other points do not require consideration. The complaint appearing in the transcript is designated the amended and substituted complaint. The demurrers were sustained in August, 1917, nearly a year and a half after the suit was

commenced. Hence, plaintiff had had ample opportunity to amend if so advised. There was no error in refusing leave to amend under the circumstances.

The judgment is affirmed.

Brittain, J., and Langdon, P. J.; concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 20, 1920.

All the Justices concurred, except Olney, J., who did not participate.