[Civ. No. 64733. Second Dist., Div. Three. May 26, 1983.]

ADMIRALTY FUND et al., Plaintiffs and Appellants, v.
PEERLESS INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Greenberg, Bernhard, Weiss, Rosin & Fern, Greenberg, Bernhard, Weiss & Karma, Herbert A. Bernhard, Stephen H. Marcus and Michael J. Finkle for Plaintiffs and Appellants.

Anderson, McPharlin & Conners, Eric N. Winter and David T. Dibiase for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiffs and appellants Admiralty Fund, the Income Fund of Boston, Inc., Competitive Capitol Fund and Seaboard Leverage Fund (Funds) appeal from a judgment entered pursuant to the granting of defendant and respondent Peerless Insurance Company's (Peerless) motion for summary judgment.

For the reasons hereinafter expressed, we conclude that equitable tolling principles may be applicable to the loss discovery provision in the fidelity insurance contract in issue in the present case.

Since the trial court in granting the summary judgment on the theory that there was "no triable issue as to the facts surrounding the loss discovery provision" did not consider the application of such principles, we reverse and remand.

### PROCEDURAL AND FACTUAL BACKGROUND

On October 10, 1975, the Funds filed a second amended complaint against Peerless and other insurance companies for damages and declaratory relief.

The Funds' complaint alleged that on or about January 28, 1960, Peerless entered into a written insurance agreement whereby Peerless insured the Funds against loss up to $500,000 resulting from the occurrence of certain described "insured risks," including loss through any fraudulent or dishonest acts committed by employees of the Funds.

The complaint further set forth that between December 31, 1959, and September 18, 1970, while the policy was in full force and effect, the Funds suffered losses as a result of the occurrence of insured risks, that it performed all conditions, covenants and promises to be performed under the policy, and that Peerless breached the agreement by refusing to pay for the losses.

On September 12, 1975, Peerless filed its answer denying the allegations and setting forth certain affirmative defenses.

Thereafter discovery was undertaken by Peerless, and on November 21, 1977, Peerless moved for a summary judgment, claiming that its policy with the Funds expired on September 18, 1970, and that under its terms, the policy provided indemnity only for loss "discovered not later than one year from the end of the policy period," and that since the Funds did not discover any loss prior to September 18, 1971, Peerless was entitled to judgment.

On December 13, 1977, the Funds filed opposition to Peerless' motion for summary judgment.[1]

On December 15, 1977, Peerless' motion for summary judgment was heard and granted.[2]

Thereafter, on January 9, 1978, the Funds filed a motion for "Vacation or Modification of Order Granting Peerless' . . . Motion for Summary Judgment," which motion was heard on April 11, 1978, and only partially granted.

---

[1]Apparently a prior motion for summary judgment by Peerless to which the Funds had filed opposition was taken off calendar by Peerless.

[2]The following ruling was entered in the minutes: "1. Court interprets the 'loss discovery' provision of the Peerless Fidelity insurance contract to mean that the insured must discover an *insured* loss within one year after the expiration of the policy. [¶] a) It is not necessary that the dishonest employee be identified but it is necessary that the insured knew of the existence of some employee defalcation or dishonesty or fraud, causing the loss. [¶] b) An 'insured loss' is a loss caused by a defalcation of an employee, as described in the fidelity insurance contract. [¶] c) As part of the quid pro quo or consideration for the requirement of strict compliance with the loss discovery provision is superseding fidelity coverage assumed by Peerless as to past losses and the expectation of other fidelity coverage for undiscovered insured losses after the expiration date plus one year grace period of the Peerless policy. [¶] 2. *There is no triable issue as to the facts surrounding the loss discovery provision. Plaintiffs did not discover an insured loss with[in] [sic] the limitation period of the Peerless policy.* [¶] 3. It is unnecessary to rule on the remaining issues raised by the summary judgment motion. . . ." (Italics added.)

The minute order reflects, inter alia, that the summary judgment granted to Peerless on December 15, 1977, and thereafter prepared and submitted to the trial court had not been signed as of April 11, 1978; that Peerless now was to have an order for a summary judgment but no final summary judgment was to be entered prior to the termination of the action.

Finally, after the actions pending against other defendant insurance companies had been settled and dismissed, a request was made to enter Peerless' summary judgment, which judgment was filed February 5, 1981.

The Funds timely appealed.

## CONTENTIONS

The Funds main contention is that the trial court erred in not applying tolling principles to the one year discovery period triggered by the Funds suffering an impossibility of discovery during that period due to the adverse domination and control by the very defalcating "employees" who caused the losses.

The Funds also assert that Peerless should have been required to show prejudice resulting from the alleged late discovery, and that there existed a question of fact as to when discovery occurred since the wrongdoers' knowledge of their own fraudulent acts may have constituted "discovery" within the time frame of the policy.

Finally, the Funds claim that there was no evidence to show that the parties agreed to strictly construe the one year discovery period in the manner interpreted by the trial court, namely, as a "quid pro quo" for Peerless' assumption of coverage for past losses.

Peerless seeks to support the trial court's rulings.

## DISCUSSION

1. *The role of the reviewing court.*

In its motion for summary judgment, Peerless set forth that the Funds admitted in interrogatories that their first notice of fraudulent or dishonest acts giving rise to the claim of loss came in "early 1973." On its face, the policy terminated September 18, 1970, and the one year "discovery" period ended September 18, 1971. Therefore, Peerless argued, the policy by its terms did not apply in this fact situation and Peerless was therefore entitled to summary judgment.[3]

---

[3] The policy reads: "Section 1. Loss is covered under this Policy only if discovered not later than one year from the end of the Policy Period."

The Funds did not dispute these facts.[4] However, the Funds contended that equitable tolling principles based on impossibility of discovery, should apply to the discovery-of-loss clause, and if applied here would present an issue of material fact as to the alleged impossibility of discovery and any period thereof.

The trial court rejected the Funds' theory of the proffered applicable law. Using a strict interpretation of the loss-discovery provision, the trial court perceived no disputed facts. Thus, the trial court's legal conclusion foreclosed any further factual determination.

■ On review, this court is equally entitled, and here particularly is required, to interpret the contract clause in question because the interpretation thereof is the central legal issue to the decision in this case. (See *Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; *Lewis* v. *City of Los Angeles* (1982) 137 Cal.App.3d 518, 522 [187 Cal.Rptr. 273].)

Therefore, our analysis of this summary judgment concerns not the trial court's factual determinations but rather the issues of law ruled on below.

2. *Novel question presented on these facts.*

■ California has long recognized the validity of discovery of loss provisions in fidelity insurance policies. (See *F. S. Smithers & Co., Inc.* v. *Federal Ins. Co.* (9th Cir. 1980) 631 F.2d 1364, 1367 (interpreting California law); *Isaac Upham Co.* v. *United States etc. Co.* (1922) 59 Cal.App. 606, 608 [211 P. 809].) Generally, the courts have strictly enforced such provisions so that neither difficulty in discovering insured losses nor employee concealment excuse the insured's performance. (13 Couch on Insurance (2d ed. rev. 1982) § 46.194, pp. 149-150.)

*Thompson* v. *American Surety of New York* (8th Cir. 1930) 42 F.2d 953, 956, held that a company could not recover on a fidelity bond that covered an employee's defalcations despite the company's failure to discover the losses after diligent effort. Similarly, in the case of *Fidelity & Casualty Co.* v. *Hoyle* (4th Cir. 1933) 64 F.2d 413, the Fourth Circuit upheld a discovery of loss clause even though "discovery of the default was prevented by a falsification of employee's books [citation], or by other means taken to conceal it." (*Id.,* at p. 416.)

However, these cases differ from the present situation of adverse domination and control, in which the very persons that control a company also perform the

---

[4]The Funds did challenge other of Peerless' factual assertions, in particular, those facts having to do with impossibility of discovery.

wrongdoings. Where such facts exist, there is no one to oversee those in charge, and so the concepts of diligence in uncovering an insurable loss and employee concealment are inapposite.

To date, no California decision has discussed the effect that adverse domination and control of the insured by persons who commit the fraudulent or dishonest acts has on a discovery-of-loss clause. Thus the parties herein present a novel question for California law: whether adverse domination and control of an insured mutual fund during the discovery-of-loss period, with the resultant alleged impossibility of discovery of an insurable loss, calls for the tolling of the discovery-of-loss period.

### 3. *California law favors the insured over the insurer whenever possible.*

California law treats insurance policies as contracts and so interprets policies according to basic contractual principles. (*Boyer* v. *United States Fidelity & Guaranty Co.* (1929) 206 Cal. 273, 276 [274 P. 57]; *Sullivan* v. *Union Oil Co. of Cal.* (1940) 16 Cal.2d 229, 237-238 [105 P.2d 922]; *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 22 [147 Cal.Rptr. 655].) Nevertheless, the courts have favored the insured whenever possible. (*Pacific etc. Co.* v. *Williamsburg* (1910) 158 Cal. 367, 369-370 [111 P. 4].) ■ When an ambiguity in a policy's language appears, the courts will construe the terms against the insurance company. (*Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 55 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518]; *Beaumont-Gribin-Von Dyl Management Co.* v. *California Union Ins. Co.* (1976) 63 Cal.App.3d 617, 622 [134 Cal.Rptr. 25].) ■ "If *semantically permissible,* the insurance contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for losses to which the insurance relates." (*Beaumont-Gribin-Von Dyl Management Co.* v. *California Union Ins. Co., supra,* at p. 622; *Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)

Thus, the general tenor of insurance policy interpretation manifests a concern for fulfilling the purpose of the insurance, that is, to indemnify the insured in case of loss. "[O]rdinarily such indemnity should be effectuated rather than defeated." (*Insurance Co. of North America* v. *Electronic Purification Co.* (1967) 67 Cal.2d 679, 689 [63 Cal.Rptr. 382, 433 P.2d 174]; cf. *Holz Rubber Co., Inc.* v. *American Star Ins. Co., supra,* 14 Cal.3d at pp. 55-56, 60; *Employers Reinsurance Corp.* v. *Mission Equities Corp.* (1977) 74 Cal.App.3d 826, 831 [141 Cal.Rptr. 727].) This general principle governs our approach to the present question.

### 4. *Discovery of loss clauses serve similar functions as statutes of limitation.*

Although discovery-of-loss clauses differ from statutes of limitation in important ways, both serve similar functions. ■ " 'Statutes of limitation . . . in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put an adversary on notice to defend within the period of limitation . . . .' " (*Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 406-407 [154 P.2d 399] (quoting from order of *R. Telegraphers* v. *Railway Exp. Agency* (1944) 321 U.S. 342 [88 L.Ed. 788, 64 S.Ct. 582]); see also *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 787 [157 Cal.Rptr. 392, 598 P.2d 45]; *Addison* v. *State of California* (1978) 21 Cal.3d 313, 317 [146 Cal.Rptr. 224, 578 P.2d 941].)

Statutes of limitation preclude those who have a valid claim from exercising unreasonable delay in pursuing the action. A person who does not press a claim during the appropriate period in effect acquiesces to the wrong suffered. (See *Whitten* v. *Dabney* (1915) 171 Cal. 621, 629 [154 P. 312]; cf. *Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 296-297 [146 Cal.Rptr. 271].) Thus, statutes of limitation induce the diligence of those who would make claims.

Similar purposes underly discovery-of-loss clauses. The South Carolina Supreme Court found that a six-month discovery-of-loss clause "was a safeguard to [the insurer] to impose upon the insured such reasonable effort to keep in touch with its employees' work and faithfulness. . . . 'The [insurance] company could protect itself to some extent by having such information.' " (*Chicora Bank* v. *United States Fidelity & Guaranty Co.* (1931) 161 S.C. 33 [159 S.E. 454, 455-456, 77 A.L.R. 857]; see also *Ballard County Bank's Assignee* v. *United States Fidelity & Guaranty Co.* (1912) 150 Ky. 236 [150 S.W. 1, 2].) Like statutes of limitation, discovery-of-loss clauses allow insurance companies "to avoid the difficulty of conducting an investigation of old claims." (13 Couch on Insurance (2d ed. rev. 1982) § 46.190, pp. 147-148.)

At the same time, discovery clauses provide insurance companies with a degree of certainty with regard to their reserve needs, enabling them to predict future requirements and to set policy accordingly. Without such certainty, insurance companies would find it difficult to engage in either short or long term planning and would therefore be disrupted in efforts to standardize premium rates or knowingly to assess risks.

Therefore, individuals or organizations that have the opportunity to discover a valid claim within the contractual period occupy the same position as those

faced with statutes of limitation. Public policy, as well as basic notions of fairness, dictate that a claimant who does not take action within the specified period acquiesces to the wrong committed. In such cases, the courts properly show no hesitation in enforcing the discovery clause.

5. *California courts have tolled the running of the statutes of limitation during adverse domination.*

█ Despite the strong policy justifications for upholding statutes of limitation, courts have consistently refused to uphold such statutes strictly when a potential claimant has no opportunity to perform a condition precedent to asserting a right to recover. (Cf. *Zurn Engineers* v. *Eagle Star Ins. Co.* (1976) 61 Cal.App.3d 493, 499 [132 Cal.Rptr. 206].) "[T]hose statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence." (*Saliter* v. *Pierce Brothers Mortuaries, supra,* 81 Cal.App.3d at p. 297.) Further, when a claim arises from a director's or employee's defalcation and the wrongdoers' control makes discovery impossible, the statute of limitation tolls. (*San Leandro Canning Co.* v. *Perillo* (1931) 211 Cal. 482, 487 [295 P. 1026]; *Burt* v. *Irvine Co.* (1965) 237 Cal.App.2d 828, 866-867 [47 Cal.Rptr. 392]; *Beal* v. *Smith* (1920) 46 Cal.App. 271, 279 [189 P. 341].)

In *Beal,* a stockholder on behalf of the corporation and its shareholders sought recovery from persons who detrimentally controlled the corporation and used it for their own aggrandizement. The court therein held that "where . . . the corporation and its board of directors were wholly under the domination of those who committed the original fraud the corporation is deemed to be in the same position as an incompetent person or a minor without legal capacity either to know or to act in relation to the fraud so committed, and during such period of incapacity the statute of limitations does not run, at least, against an innocent stockholder who was without knowledge of the fraud." (*Beal* v. *Smith, supra,* 46 Cal.App. at p. 279.)[5]

---

[5]We recognize that here we have an innocent insurance company involved as a defendant to be contrasted with the wrongdoer defendant Beal in that case. However, the rationale on the statute of limitation/discovery-of-loss clause point is analogous and persuasive. Further, California courts have often tolled notice of loss provisions in suits against "innocent" insurance companies.

In *Zurn,* Division One of this court held that an insurance company could not invoke a statute of limitation until the insured had a reasonable opportunity to comply with the policy's conditions. (*Zurn* v. *Eagle Star Ins., supra,* 61 Cal.App.3d at p. 500.) Similarly, while enforcing a notice of loss clause in a fidelity guaranty insurance contract, Division Two of this court implied that such a clause would not win when the insured had no knowledge of an insured loss. (*Los Angeles Athletic Club* v. *United States Fidelity & Guaranty Co.* (1919) 41 Cal.App. 439, 447 [183 P. 174].)

In *Burt* v. *Irvine Co., supra,* 237 Cal.App.2d at page 867 the appellate court held that an action for fraud committed against a corporation is tolled for the period that those responsible for the fraud remain in control of the corporation.

*6. Equitable tolling principles must apply to discovery of loss clauses in fidelity insurance contracts of mutual funds.*

The nature of mutual funds places the shareholders of such funds in a similar position to that of the shareholders in *Beal.* The case of *Tannenbaum* v. *Zeller* (2d Cir. 1977) 552 F.2d 402 [47 A.L.R. Fed. 559] involved a shareholder's derivative suit against a mutual fund's investment advisor for unlawful failure to recapture portfolio brokerage commissions and inadequate disclosure of the fund's brokerage practices to the shareholders. The *Tannenbaum* court made the following observations: "The mutual fund industry is in many ways unique, which in part explains the specific federal regulatory legislation concerning it. [Citation.] A mutual fund is a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belongs to the individual investors holding shares in the fund. The management of this asset pool is largely in the hands of an investment adviser, an independent entity which generally organizes the fund and provides it with investment advice, management services, and office space and staff. The adviser either selects or recommends the fund's investments and rate of portfolio turnover, and operates or supervises most of the other phases of the fund's business. . . . Control of a mutual fund . . . lies largely in the hands of the investment adviser . . . ." (*Id.,* at p. 405.) The United States Supreme Court recently noted "the potential for abuse inherent in the structure" of mutual funds. (*Burks* v. *Lasker* (1979) 441 U.S. 471, 480 [60 L.Ed.2d 404, 414, 99 S.Ct. 1831].)

This near absolute control can place the shareholders of a mutual fund, like the shareholders in *Beal,* in a position of incapacity, and may make discovery of any wrongdoing impossible. In such a case, we cannot say that the victim has knowingly disregarded the wrongdoer's acts nor can we rule out the possible applicability of tolling a *statute of limitation* until the shareholder could discover the fraud. (Cf. *Whitten* v. *Dabney, supra,* 171 Cal. at p. 621.)

The similar purposes and functions of *discovery-of-loss* provisions lead us to evaluate the applicability of equitable tolling principles to these clauses in a like manner.

*7. Application of concepts to present fact situation.*

In the present case, the Funds allegedly faced circumstances similar to those in *Beal* and *Whitten.* Although the Funds knew they had suffered losses, they declared that they could not have discovered the true cause of the losses, that is, the employees' dishonesty, until the wrongdoers relinquished control of the Funds' operations.

If in fact the dishonest president and other high ranking officers controlled the Funds' operations to such an extent as to preclude discovery, the tolling of a discovery-of-loss provision should be considered.

8. *Our ruling is consistent with intent of Investment Company Act of 1940.*

We find support for this conclusion in that it furthers the purposes of the Investment Company Act of 1940 (Act), pursuant to which the Funds claimed to have obtained the Peerless fidelity policy. (15 U.S.C. § 80a-1 et seq.) The regulations promulgated under this Act require investment companies at all times to maintain fidelity insurance against losses due to employee dishonesty. (17 C.F.R. § 270.17g-1(a).)

The Act itself states: "[I]t is declared that the national public interest and the interest of investors are adversely affected—[¶] . . . . [¶] (2) when investment companies are organized, operated, managed, or their portfolio securities are selected, in the interest of directors, officers, investment advisers, depositors, or other affiliated persons thereof . . . rather than in the interest of all classes of such companies' security holders; . . ." (15 U.S.C. § 80a-1(b)(2).)

In adopting the Act, Congress sought "to prevent self-dealing on the part of those managing and controlling investment companies and to protect shareholders in these funds from dishonest and self-dealing advisers." (*United States* v. *Brashier* (9th Cir. 1976) 548 F.2d 1315, 1320-1321.)

To this end, the Act allowed the SEC to require fidelity bonding of mutual fund employees. In recommending a bonding requirement, one witness at the hearings on the proposed Act cited the case of a board of directors that used its insider's position to fleece the unknowing stockholders. "The fact of the matter is that if there were bonds on the officials . . . [the stockholders] might have got part of their money back." (Statement of David Schenker, Chief Counsel, SEC Investment Trust Study, Apr. 9, 1940, Hearings on Sen. No. 3580 before Sen. Subcom. on Securities and Exchange of the Com. on Banking and Currency, 76th Cong., 3d Sess., ch. 1, pp. 254, 264-265.)

The Funds here maintained that they could not have discovered the insured losses during the period of adverse domination and control. As a result, if the period was not tolled, the investors would be denied the continuous protection anticipated by the Act. In other words, because the wrongdoers remained in their positions beyond the discovery period, the Funds' shareholders would receive no protection under the Peerless policy for the time the wrongdoers controlled the Funds. The result is that those persons most in need of insurance, i.e., the shareholders in companies dominated by those causing insurable

losses, receive little if any protection. This is clearly contrary to the intent of Congress in adopting the Act.

Peerless suggests, however, that the Funds' other fidelity policies contain superseding coverage clauses that would make up for the Funds' lack of coverage under the Peerless policy. Peerless states that these clauses follow industry practice, and argues that the Funds bargained for inclusion of the clause in the Peerless policy in exchange for a strict interpretation of the discovery-of-loss provision.

We find no facts in this record to suggest such a quid pro quo. The record contains no other alleged policy, and we therefore limit our scrutiny to the Peerless policy.

### 9. *The Kehoe case suggests our position.*

Finally, we note that our decision is consistent with the only other case to address the precise issue of tolling of discovery-of-loss clauses during periods of adverse domination and control. (*Kehoe* v. *Peerless* (D.Mass. 1980) CCH Fed.Sec.L.Rep. ¶ 97583, p. 98092.)

In *Kehoe,* the plaintiff's policy contained a discovery-of-loss clause identical to the one here. Peerless there sought summary judgment because the plaintiff did not discover the insured loss until after the period expired. The court denied Peerless' motion stating "[a] bond which is written to comply with the requirements of [the Investment Company Act of 1940] . . . must be construed in accordance with the spirit of the law." (*Id.,* at p. 98094.)

Although the *Kehoe* court recognized that issues of fact remained, if the shareholders could not discover the directors' misfeasance due to the directors' control of the company, the shareholders could not be held to accomplish the impossible, and so the discovery clause was tolled. (*Ibid.*)

Because of our holding on this matter, we need not address the parties' other contentions.

CONCLUSION

The allegations of the Funds set forth in declarations and affidavits accompanying their motion in opposition to the summary judgment to the effect that the domination and control of their management by wrongdoer employees made discovery of loss impossible in this fact situation, called for the trial court to entertain the legal theory as to whether equitable tolling principles should apply to the loss discovery provision, and if so, whether an issue of material fact was created thereby.

Since the resolution of this issue is dispositive of this case in the main, we do not discuss the other contentions raised except in one respect. The trial court's ruling that part of the consideration for the "requirement of strict compliance with the loss discovery provision is superceding [*sic*] fidelity coverage assumed by Peerless . . . ," would seem to have required the trial court to make a factual finding as to the intent of the parties. Nothing in this record supports that ruling, and since that ruling provides at least some basis for the trial court's rationale, the question of such intent may be another issue of disputed material fact.

### DISPOSITION

The trial court's order of summary judgment is reversed and the matter remanded for further proceedings consistent with this opinion.

Lui, J., and Danielson, J., concurred.

A petition for a rehearing was denied June 22, 1983, and respondent's petition for a hearing by the Supreme Court was denied July 20, 1983.