**J.I. CORPORATION, f/k/a New England Rare Coin Galleries, Inc., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, d/b/a Chubb Group of Insurance Companies, Defendant.**

**Civ. A. No. 89–0613–H.**

United States District Court, D. Massachusetts.

Feb. 21, 1990.

---

Richard d'A. Belin, Foley, Hoag & Eliot, Boston, Mass., Armen R. Vartian, General Counsel, New York City, for plaintiff.

Paul R. Devin, George C. Rockas, Peabody & Arnold, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Defendant Federal Insurance Company and Plaintiff J.I. Corporation, formerly known as New England Rare Coin Galleries, Inc. (NERCG), filed cross motions for summary judgment. The motions arise out of a dispute concerning the interpretation of a fidelity insurance policy ("the policy")[1] which insured plaintiff against losses sustained as a result of employee dishonesty. The policy was in effect from December 30, 1981 to December 1, 1982. Plaintiff discovered and reported the losses, described in the Amended Complaint, to defendant Federal in January, 1986, over three years after termination of the first policy. Defendant denied coverage because plaintiff failed to comply with the policy's discovery and notice provisions. For reasons set forth, the Court grants Defendant's Motion for Summary Judgment and denies that of plaintiff.

The policy's Insuring Clause provides, in relevant part:

> In consideration of payment of the required premium and subject to all of the terms and provisions of this policy, the Company agrees with the Insured to pay the Insured for losses any Insured shall sustain or discover it has sustained during the policy period in the manner set forth below.

(Policy No. 1 at 3).

Section 2.1 of the Policy Exclusions states, in relevant part, that:

> Coverage under this policy does not apply to:

---

1. Plaintiff owned two consecutive policies issued by defendant; Federal paid the limit of coverage under the second policy for $100,000.

The coverage provisions of this policy are not disputed by either party.

loss unless discovered and written notice thereof given to the Company within (1) sixty days following termination of this policy in its entirety; ... or

loss sustained by any Insured herein unless discovered and written notice thereof given to the Company within sixty days following termination of this policy as to such Insured, or

loss under any Insuring Clause which is terminated in its entirety unless discovered and written notice thereof given to the Company within sixty days following such termination.

(Policy No. 1, Sec. 2.1 at 5).

The policy also provides an optional longer discovery period by which an insured, for an additional premium, may extend the discovery date from sixty days to one year. (Policy No. 1, Sec. 4.8 at 10). Plaintiff did not attempt to extend the discovery period by paying a premium.

The plaintiff stated that the alleged loss occurred during the period December 30, 1980 through December 30, 1981. Amended Complaint at ¶ 7). The policy was cancelled in December, 1982. Discovery occurred in January, 1986, when the dishonest employees were indicted by a federal grand jury and their scheme to defraud plaintiff came to light. (Affidavit of Patricia Duffy, Exh. 5, Statement in Proof of Loss).

Construction of policy language is a question of law for the judge. *Jet Line Services, Inc. v. American Employers Insurance Co.*, 404 Mass. 706, 710 n. 5, 537 N.E.2d 107 (1989) (citing *Cody v. Connecticut General Life Insurance Co.*, 387 Mass. 142, 146, 439 N.E.2d 234 (1982)). An insurance contract should be construed according to the "fair and reasonable meaning of the words in which the agreement of the parties is expressed." *Cody v. Connecticut General Life Insurance Co.*, 387 Mass. 142, 146, 439 N.E.2d 234 (1982) (citations omitted). Where no ambiguity exists, the terms of an exclusionary provision apply according to their ordinary meaning. *See Thomas v. Hartford Accident & Indemnity Co.*, 398 Mass. 782, 784, 500 N.E.2d 810 (1986) (citing *Royal–Globe Ins. Co. v.*

*Schultz*, 385 Mass. 1013, 434 N.E.2d 213 (1982)).

The specific type of contract at issue here is an employee crime policy or a fidelity insurance policy. These policies typically limit liability of the insurer based upon compliance with the discovery period, and at least one commentator notes that such discovery provisions are not contrary to public policy. 13 G. Couch & R. Anderson, *Couch on Insurance 2d*, 46.191 (Rev.Ed. 1982). Similarly, notice provisions of a fidelity policy are valid and enforceable. *Boston Mutual Life Insurance Co. v. Fireman's Fund Ins. Co.*, 613 F.Supp. 1090, 1106 (D.Mass.1985). Plaintiff attacks both the policy's discovery and notice provisions as unenforceable in this case. The Court will address each separately.

Although plaintiff agrees that, in general, discovery provisions of this type are enforceable, plaintiff cites two cases which depart from the general rule, and argues that this case should be added to those exceptions. The cases, *Kehoe v. Peerless Insurance Co.*, [1980 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 97,583 at 98,092, 1980 WL 1425 (D.Mass. June 22, 1980), and *Admiralty Fund v. Peerless Insurance Co.*, 143 Cal.App.3d 379, 191 Cal.Rptr. 753 (1983), can be distinguished for the limited exceptions to the general rule which they represent, and which are apparent from their facts.

Both cases involved the dishonest and fraudulent misuse of mutual funds by dishonest officers who exercised "adverse domination and control" over the management of such funds, which prevented any opportunity for discovery by powerless investors. In both cases the courts' interpretations of discovery provisions in the respective fidelity policies were influenced by a desire to make the policies' protections consistent with the Investment Company Act of 1940. The Act sought to protect innocent shareholders from "dishonest and self-dealing advisers" through fidelity insurance policies. *Admiralty Fund*, 143 Cal.App.3d 379 at 389, 191 Cal.Rptr. 753 at 759; *Kehoe* ¶ 97,583 at 98,094.

In contrast to the totally powerless shareholders of *Admiralty* and *Kehoe*, the sole shareholder and owner of NERCG, a James L. Halperin, supervised the company on a daily basis, and held weekly meetings regarding the 45 Milk Street project, which was the subject of the fraudulent schemes. It was Halperin who had the authority to hire and fire the dishonest employees.

Although Halperin's subordinates successfully concealed the fraudulent scheme from him, successful concealment is the hallmark of every employee fraud case, and it cannot be the basis for evading the clear language of discovery provisions in a fidelity policy. The critical element which must be met in order for an exception to apply is adverse domination and control by the defrauding employees. There can be no comparison between the total and absolute control of the dishonest employees in *Kehoe* and *Admiralty* and that of the employees in this case. If someone in Halperin's position, as sole shareholder and owner with the complete authority to hire and fire wrongdoers, can successfully argue adverse domination and control as a basis on which to abrogate the discovery provisions of a fidelity policy, this exception would swallow the general rule and discovery provisions of fidelity policies would be completely unenforceable.

In its attempt to defeat the notice provision of the policy, plaintiff relies upon a 1980 Supreme Judicial Court of Massachusetts decision, *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 282, 409 N.E.2d 185, 188 (1980), which extended a statute, Mass.Gen.Laws Ann. ch. 175, § 112 (1984) originally enacted in 1977. Both the statute and the case applied a prejudice requirement upon insurers of all liability policies where plaintiffs failed to make timely notice. The statute by its terms applies to "a motor vehicle liability policy ... or any other policy insuring against liability ..." The *Johnson Controls* case held that "where an insurance company attempts to be relieved of its obligations under a liability insurance policy" not covered by the statute on the grounds of untimely notice, an insurer must demonstrate prejudice to its position by virtue of the untimely notice in order to prevail on this basis. (Emphasis added). 381 Mass. at 282, 409 N.E.2d 185.

Additionally, although Judge Keeton in the *Boston Mutual* case did not reach the question of whether *Johnson* "would apply by analogy to fidelity insurance policies," 613 F.Supp. at 1106, his comment implies that a fidelity policy is distinguishable from a liability policy, thus precluding an automatic extension of the holding in *Johnson* to all types of insurance policies. Finally, in an unreported Massachusetts Superior Court case, the court (Murphy, J.) stated that *Johnson Controls* did not extend to first-party property insurers. *United Technologies Corporation v. Liberty Mutual Insurance Company*, No. 87-7172, slip op. at 4 (Mass.Sup.Ct., October 27, 1988). This is a further indication of a reluctance to apply *Johnson* across the board.

Accordingly, this Court declines to extend the prejudice requirement of *Johnson Controls* to fidelity insurance policies. The Court, therefore, grants defendant's motion for summary judgment on the basis that the plaintiff failed to comply with unambiguous discovery and notice provisions of the policy.