Alice **MASSA**, et al., Plaintiffs,

v.

**PEABODY COAL COMPANY, Defendant.**

No. TH 88–63–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 10, 1988.

Max Goodwin, Mann Chaney Johnson Goodwin & Williams, Terre Haute, Ind., David A. Pope, Carr Tabb & Pope, A. Timothy Jones, Freeman & Hawkins, Atlanta, Ga., for plaintiffs.

William P. Wooden, Wooden McLaughlin & Sterner, Indianapolis, Ind., for defendant.

## ENTRY

TINDER, District Judge.

This cause comes before the court upon the defendant's Motion for Partial Summary Judgment. The court having read the memoranda submitted by the parties and being duly advised hereby DENIES defendant's Motion in its entirety.

### Background

Plaintiffs instituted this cause of action seeking damages and injunctive relief alleging violations of the regulations governing blasting and air quality, as well as, common law claims in nuisance, negligence and trespass arising out of defendant, Peabody Coal Company's, mining and blasting activities at the Universal Mine located in Vermillion County, Indiana. The defendant filed a Motion for Summary Judgment in this case raising three issues to be decided by this court namely, whether this case properly falls within the abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), whether alternatively this case falls within the primary jurisdiction of two administrative agencies, the Indiana Department of Environmental Management (DEM) and the Indiana Department of Natural Resources (DNR), such that this court should refrain from exercising its jurisdiction, and whether plaintiffs' action is foreclosed because of their alleged failure to comply with the

notice provisions of Ind.Code § 13–6–1–1(b) and Ind.Code § 13–4.1–11–11, jurisdictional prerequisites for filing suit according to the defendant.

### Discussion

Summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is properly granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. Summary judgment must be entered against the nonmoving party if, after adequate time for discovery, the party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2553. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2553.

### A. *Burford Abstention*

The defendant in this case asserts that the court should dismiss this suit on the grounds of abstention. Defendant maintains that this court's consideration of the issues in this case would unnecessarily conflict with state efforts to establish and maintain a coherent administrative policy with respect to matters of substantial public concern, namely coal mining regulation. In *Burford v. Sun Oil Co.*, 319 U.S. 315, 63

S.Ct. 1098, 87 L.Ed.2d 1424 (1943), the Supreme Court first recognized a so-called "administrative abstention" doctrine, which permits a federal court to abstain from exercising its jurisdiction in a case where to do so "would avoid undue interference with state interests." Note, *Abstention by Federal Courts in Suits Challenging State Administrative Decisions: The Scope of the Burford Doctrine*, 46 U.Chi.L.Rev. 971, 974 (1979). The case law which has interpreted *Burford* abstention is indefinite as to its parameters; however,

> [t]he general rule that emerges from [an] analysis of the potential disruption problem is that *Burford abstention may be appropriate* when necessary *to avoid* an error by a federal court concerning state law that would have *a disruptive effect on important state policies, but only when the effect extends beyond the scope of the issues litigated in the immediate case.*

*Id.* at 999 (emphasis added). As the Seventh Circuit Court of Appeals noted in *Ryan v. Bd. of Elections*, 661 F.2d 1130 (7th Cir.1981), *Burford* abstention is "appropriate, therefore, only where there are difficult questions of state law bearing on policy problems whose importance transcends the result in the case." *Id.* at 1135. The *Ryan* court further noted that *Burford* abstention is designed to address the case where federal review of the issues in a case "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial state concern." *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

Within the framework of *Burford*, abstention, it is incumbent upon this court to consider that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The *Colorado River* court further explained that:

> [t]he doctrine of abstention, under which a District Court may decline to exercise

or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in exceptional circumstances where the order to repair to the state court would clearly serve an important countervailing interest.

*Id.* at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959)). Therefore, the determination of whether *Burford* abstention properly applies in this case and consequently whether this court should decline the exercise of jurisdiction over the plaintiffs' preliminary injunction claims, essentially becomes one of balancing the harm of federal intervention to state interests against the benefit the plaintiffs would derive from a federal forum.

In the materials that the defendant submitted in support of its Motion for Summary Judgment, it described in substantial detail the administrative agency framework in the industry. Defendant maintains that the DEM and DNR have promulgated comprehensive regulatory policy for the coal mining industry, which policy would be compromised by the court's determination of the preliminary injunction issues. Defendants argue in that regard, that the plaintiffs in this case are asking the court to consider the adequacy of the regulatory standards with respect to mining, blasting, and air quality and to impose far stricter "no-dust, no-vibration" rules. In reviewing the materials submitted by the plaintiffs in this instance, the court is not persuaded that the plaintiffs actually are trying to impose stricter standards which would apply to all mining projects. Rather, as the plaintiffs specifically state in their Brief in Response to Defendant's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, they "simply seek to enjoin Peabody from conducting its mining operations in violation of the applicable statutory and common law." *Id.* at 1. The plaintiffs do not argue that the regulations at issue in this case are insufficient in their memoran-

da. Their arguments focus on instances where the regulations were violated and upon alternative common law theories of recovery which are independent of the regulatory framework.

In *Colorado River* the Supreme Court noted *Burford* abstention was "appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." 424 U.S. at 814, 96 S.Ct. at 1244. The court then recognized that where the state law to be applied is well-settled, the questions do not bear directly upon policy, and the court's decision would not impair state policy implementation, abstention is not required. *Id.* at 815, 96 S.Ct. at 1245. In the instant case, the plaintiffs are asking this court to determine whether Peabody is in compliance with the regulatory standards. The distinction between the case at bar and cases where *Burford* abstention has been followed can be characterized as the distinction between questioning the regulations themselves and questioning compliance with the regulations. In the case where compliance is being questioned, the rationale behind *Burford* abstention becomes strained. The plaintiffs are not asking the court to restructure the regulatory system in general in this case. To the contrary, the plaintiffs specifically rely on the defendant's failure to comply with the regulations as evidence of liability. To the extent that changes in blasting and mining procedures are requested those changes are to be site-specific.

Abstention does not extend so far as to require the dismissal of the common law claims in this case. The theories of nuisance, trespass and negligence are claims which exist independently of the regulations concerning vibration and air quality. Even if *Burford* abstention was appropriate in this instance, that abstention simply does not extend to preclude a remedy under traditional tort causes of action. Although a comprehensive system of regulation exists for the mining industry, it cannot be said that those regulations and the

remedies and enforcement procedures which are established therein are exclusive. The regulatory framework does not foreclose common law actions. No argument for *Burford* abstention is persuasively directed at the common law claims, because they involve aspects of law which are simply not addressed in the regulations. That is, the plaintiffs' common law claims are directed to specific injuries arguably resulting from Peabody's mining and blasting activities at the Universal Mine. In that sense, the plaintiffs' allegations and the relief which they seek is site-specific; therefore, a judicial decision of this case would not necessarily have a broad-sweeping effect on the mining industry in general.

The effects of mining and blasting on a community are varied and the nature of those effects and their severity is very much a function of local circumstances. A keystone of *Burford* abstention is that a decision in the District Court would have a substantial impact on policy formation and implementation, transcending the decision of the case then at bar. Where, as here, there is no indication of such a wide ranging effect, abstention, resulting in the plaintiffs' loss of a federal forum, cannot be justified.

A final consideration, supporting the denial of *Burford* abstention in this case, is the lack of a centralized forum of review. In *Ada–Cascade Watch Co. v. Cascade Resource Recovery*, 720 F.2d 897 (6th Cir. 1983), the Sixth Circuit Court of Appeals noted that two factors justify abstention under *Burford*, the presence of a complex regulatory system which would be disrupted by federal court intervention, and the existence of a state forum with specific competence for centralized review. *Id.* at 903. Similarly, in *Knudsen Corp. v. Nevada State Dairy Com'm*, 676 F.2d 374 (9th Cir.1982), the Ninth Circuit Court of Appeals recognized that the state's decision to concentrate suits challenging the actions of an agency in a particular court was an important criteria supporting abstention under *Burford*.

In this case there has been no effort to centralize review in a particular forum. The regulations primarily establish only limited administrative procedures for initial challenges to the regulations; however, they do not limit the forums in which judicial remedies may be obtained. Thus, it appears that the state forums have no particular expertise and are not vested with exclusive control over mining and blasting actions. Therefore, the considerations underlying *Burford* abstention do not apply. *See United States v. Cargill, Inc.*, 508 F.Supp. 734, 747 (D.Del.1981). Abstention is warranted in only exceptional cases. The requisite extraordinary circumstances necessary to support *Burford* abstention are not satisfied in this case; therefore, defendant's Motion for Summary Judgment concerning abstention is hereby DENIED.

## B. *Primary Jurisdiction*

■ In its Motion for Summary Judgment the defendant also alleges that primary jurisdiction over the issues in this case lies with Indiana's administrative agencies, the DEM and the DNR. Primary jurisdiction "is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented." *Johnson v. Artim Transp. System, Inc.*, 826 F.2d 538, 548 (7th Cir. 1987) *cert. denied,* —— U.S. ——, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988). The doctrine of primary jurisdiction recognizes that in some instances the court might properly in the exercise of its discretion "stay its hand until the agency has applied its expertise to the salient questions." *Hansen v. Norfolk & Western Ry. Co.*, 689 F.2d 707, 710 (7th Cir.1982). The doctrine of primary jurisdiction arose in "recognition of the need for an orderly coordination between the functions of court and agency in securing the objectives of their often overlapping competency." *United States v. Elrod*, 627 F.2d 813, 817 (7th Cir.1980) (quoting *Interstate Commerce Com'm v. All–American, Inc.*, 505 F.2d 1360, 1362 (7th Cir.1974)).

In *Elrod,* the Seventh Circuit Court of Appeals further determined that the doctrine is inapplicable where the issue is one of compliance with administrative standards and regulations, rather than the reasonableness of those standards. *Id.* at 818.

To the extent that the plaintiffs rely on the regulations and standards of the DEM and the DNR, they assert that Peabody has failed to comply with those standards. In addition, the plaintiffs raise several common law theories, which suggest that even if Peabody is in compliance with the agency standards, its conduct may be in violation of other standards arising out of the common law, wholly independently from the agency regulations. Although the possibility exists that some of Peabody's blasting and mining conduct may be subject to revision if these common law standards are breached, those changes would not properly fall within the exclusive authority of the Indiana regulatory agencies. The resolution of the common law questions in this case do not fall beyond the traditional competence of the judiciary. In fact, the types of issues to be resolved under the negligence, trespass and nuisance theories in this case are traditionally the exact types of questions that the court is called upon to answer. To the extent that the plaintiffs' common law theories challenge the regulations herein, the challenges are the result of site-specific circumstances and factors. The court's resolution of the issues herein would not have broad-sweeping effect on the regulation of the mining industry generally. Therefore, the court is in as good a position as the regulatory agencies to consider the relevant factors and to balance the competing interests in order to reach a conclusion. The case at bar does not present issues of broad-based regulatory reform which are more properly placed with the agencies for a determination. The allegations herein and the remedies sought are largely the result of factors, including the mine's location in relation to the towns of Blanford and Universal, which are unique to this situation. In that sense, the questions presented here are not unlike any other case where a federal court is required to address issues of state law which could have some effect on administrative policy. Absent an effect which extends beyond the case at bar, there is no indication that this case properly falls within the expertise of the agency, such that the court should refrain from exercising its jurisdiction. The defendant's Motion for Summary Judgment with respect to the primary jurisdiction doctrine is therefore DENIED.

C. *Notice Provisions of Ind.Code § 13-6-1-1 and Ind.Code § 13-4.1-11-11*

Finally, the defendant asserts that the plaintiffs are foreclosed from maintaining this suit because of their failure to comply with the notice provisions of Ind. Code § 13-6-1-1 and Ind.Code § 13-4.1-11-11. Section 13-6-1-1 reads in relevant part:

The attorney general of the state of Indiana, or any state, city, town, county, or local agency or officer vested with the authority to seek judicial relief, *any citizen of the state of Indiana, or any corporation, partnership, or association maintaining an office in the state of Indiana may maintain an action for declaratory and equitable relief in the name of the state of Indiana against any individual, partnership, copartnership, firm, company, corporation, association, joint stock company, trust, estate, state agency, or officer, city, town, county, or local government unit, agency, or official, or any other legal entity or their legal representative, agent or assigns, for the protection of the environment of the state from significant pollution, impairment, or destruction. Any citizen,* partnership, corporation, association, or public officer or agency, as a condition precedent to maintaining such action, *shall give notice in writing by registered or certified mail to the department of natural resources and the department of environmental management or its successor agency in environmental affairs, and to the attorney general of the state, who shall promptly notify all state administrative agencies having jurisdiction over or control of the pollution, impairment, destruction, or protection of*

*the environment for which relief is sought.*

Ind.Code § 13–6–1–1(a) (emphasis added).

The very terms of this statute indicate that the notice provision is imposed upon an individual filing suit "in the name of the state of Indiana" seeking injunctive relief protecting the environment. This provision has the effect of enlarging the base of people with standing to sue in order to protect the environment.

In this case, the plaintiffs have not instituted this action on behalf of the state. Rather, the plaintiffs allege injury and damage to their persons and property. That is, the plaintiffs herein are alleging personal injury and damage which is distinct from any damage to the environment which might also result from the defendant's conduct. This statute simply cannot be read so expansively as to abolish private causes of action merely because private individuals are given standing to file suit in a capacity as a private attorney general in instances where someone's conduct damages the environment. Defendant's Motion for Summary Judgment asserting the plaintiffs' failure to comply with the notice provisions of Ind.Code § 13–6–1–1 is hereby DENIED.

■ Lastly, the defendant asserts that the plaintiffs are foreclosed from pursuing this action because of their failure to comply with the notice provision of Ind.Code § 13–4.1–11–11. That statute provides in relevant part:

(a) In addition to other remedies available under statutory or common law, any person with an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this article:

(1) Against any person allegedly in violation of this article, any commission rule promulgated pursuant to this article, or any notice or order issued under this article; however, a commencement of any action under this clause, shall occur in the county in which the surface coal mining and reclamation operation complained of is located....

(b) A person may not commence an action under subsection (a)(1):

(1) Prior to sixty (60) days after notice is given by that person to the director, the commission, and to any alleged violator; or

(2) If the director or the state has commenced a civil action and is diligently prosecuting that action to require compliance with this article, any commission regulation promulgated pursuant to this article, or any notice or order issued under this article; however, any person may intervene in that action as a matter of right.

Although this statute technically requires notice to the violator sixty (60) days prior to the initiation of a lawsuit to compel compliance, it is silent as to the exact requirements of the notice. It is undisputed that the purpose of the notice requirement is to insure that the DEM, the DNR, or the violator can take corrective action, if they chose to do so prior to the institution of lawsuit. To satisfy the purposes of the notice requirement; therefore, it would seem that the plaintiffs need only identify potential violations to provide the regulatory agencies and the alleged violator with the opportunity to institute remedial measures to possibly avoid the need for litigation.

In this case, there is substantial evidence that both the regulatory agencies and Peabody were notified on numerous occasions of the complaints lodged against Peabody for its mining and blasting activities. The court cannot accept the defendant's assertion that the relevant entities were not on notice of the alleged violations in this case. The statute does not specifically require that the notice be in writing, nor does it attach any specific requirements to the notice. Where, as here, the purpose of the notice provision has been satisfied, the court determines that the plaintiffs actions comprise substantial compliance with the notice provision. The court declines to adopt the severe restrictions which the defendant advances herein, especially in light of the overwhelming evidence to suggest that both the regulatory agencies and Peabody were aware of the plaintiffs' allegations.

In addition, subsection (f) of Ind.Code § 13–4.1–11–11 suggests that the technical

notice requirements advanced by the defendant are not a prerequisite to maintaining an action for injunctive relief under Indiana's SCMRA. Subsection (f) of the statute provides that:

Nothing in this section restricts any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any of the provisions of this article and the regulations thereunder, or to seek any other relief (including relief against the commission).

A literal reading of this provision indicates that the notice requirement of the statute is not intended to extinguish a plaintiff's right to maintain an action or otherwise restrict a person's right to seek enforcement of the statute or any other common law remedy. Where the parties of interest are aware of the alleged violations, it would be unduly harsh to foreclose the plaintiff from maintaining an action to enforce the SCMRA. The statute was specifically drafted to avoid such severe restrictions. The court finds that the plaintiffs herein have fulfilled the purpose of the notice provision; therefore, defendant's Motion for Summary Judgment concerning the notice provision of Ind.Code § 13-4.1-11-11 is hereby DENIED.