Douglas and Barbara WALLING, Individually and as Parents and Next Friends of Adam and Ann Walling, their Minor Children, Appellants–Plaintiffs,

v.

APPEL SERVICE COMPANY, INC. d/b/a Appel Heating and Air Conditioning Company, Appellee–Defendant.

No. 73A01–9312–CV–416.

Court of Appeals of Indiana, First District.

Oct. 19, 1994.

Richard N. Bell, Gregory L. Laker, Cohen & Malad, P.C., Indianapolis, for appellants.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Douglas and Barbara Walling appeal from the trial court's entry of partial summary judgment in favor of Appel Service Company, Inc. Appel pumped over 500 gallons of fuel oil into the basement of the Wallings' home after the driver of its delivery truck mistook the Wallings' home for a residence two streets away which was scheduled to receive the oil. The Wallings filed suit against Appel and, after twice amending their complaint, alleged counts for (1) negligence; (2) criminal trespass; (3) violation of Indiana Code § 13–7–11–6(c); (4) violation of Indiana Code § 13–7–4–1; and (5) criminal conversion. Appel and the Wallings filed cross-motions for summary judgment on Counts III and IV, the statutory environmental claims, and the trial court entered final judgment on those counts for Appel.

We affirm.

### ISSUES

We restate the issues presented for review as follows:

1. Whether Appel is liable under Indiana Code § 13–7–11–6(c) for dumping "solid waste" onto the Wallings' property by delivering fuel oil to the wrong residence.

2. Whether the Wallings may recover for personal injury and property damage in a citizen suit under Indiana Code § 13–6–1–1.

### FACTS

The facts construed most favorably to the Wallings show that on February 23, 1990, a driver for Appel was instructed to deliver 500 gallons of fuel oil to a residence at 5751 North Delaware Street in the Meridian–Kessler area of Indianapolis. The driver, who was not familiar with the area, instead arrived at 5751 North Central Avenue, the Wallings' residence.

Appel's driver found a fill pipe outside the Wallings' home of the type normally used as a receptacle for a fuel oil tank, and he began pumping fuel oil into the pipe. However, the Wallings' home had been converted many years ago from oil to natural gas heat. Therefore, the fill pipe into which Appel's driver pumped oil did not pour into a storage tank but lead directly into the basement of the Wallings' home. When the Wallings returned, they discovered that Appel's driver had pumped some 580 gallons of fuel oil into their basement.

Thereafter, Appel paid for the removal and clean up of the fuel oil. Because the oil had seeped into cracks and drains in the basement floor, oil penetrated the home's subsoil, and the Marion County Health Department was required to remove part of the basement floor to eliminate the contaminated soil. In addition to incurring property damage, the Walling family experienced headaches and nausea as a result of toxic fumes emitted by the fuel oil.

### DISCUSSION AND DECISION

#### Standard of Review

In reviewing a ruling on a motion for summary judgment, this court applies the

same standard applied by the trial court. *American Family Mut. Ins. Co. v. Dye* (1994), Ind.App., 634 N.E.2d 844, 846. Summary judgment is appropriate only if "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). All facts and inferences from the designated evidentiary matter must be liberally construed in favor of the non-moving party. *Terre Haute First Nat. Bank v. Pacific Employers Ins. Co.* (1994), Ind.App., 634 N.E.2d 1336, 1337. Cross-motions for summary judgment on the same issues do not alter our standard of review; rather, our inquiry remains whether a genuine issue of material fact exists which requires a trial on the merits. *Fifth Third Bank v. Bentonville Farm Supply, Inc.* (1994), Ind.App., 629 N.E.2d 1246, 1248, *trans. denied.*

■ Appel has not filed a brief on appeal and, thus, we may reverse the trial court's decision upon a prima facie showing of reversible error. *See Head v. State* (1994), Ind.App., 632 N.E.2d 749, 750. However, we may in our discretion decide the case on the merits. *Id.* Because this appeal involves questions of first impression in Indiana, we will address the Wallings' claims on the merits.

### Issue One: Solid Waste

■ The Wallings first contend that they have a cause of action against Appel pursuant to Indiana Code § 13–7–11–6(c) (the "landowner recovery statute"), which provides:

A landowner on whose land garbage *or other solid waste* has been illegally dumped without the landowner's consent may, in addition to any other legal or equitable remedy available to the landowner, recover from the person responsible for the illegal dumping:

(1) reasonable expenses incurred by the landowner in disposing of the garbage or other solid waste; and

(2) reasonable attorney's fees.

(Emphasis added). While the Wallings concede that the fuel oil Appel pumped into their basement is not "garbage," they insist that the fuel oil is classified as "solid waste" under the statute. Solid waste is defined as "garbage, refuse, sludge ... or *other discarded material,* including solid, *liquid,* semi-solid...." IND.CODE § 13–7–1–22 (emphases added). Thus, the Wallings maintain that because fuel oil qualifies as "solid waste" in the form of a liquid, Appel is liable under Indiana Code § 13–7–11–6(c). We do not agree.

The crucial part of the definition of "solid waste" at issue in this case is the language "other discarded material." To state a cause of action under Indiana Code § 13–7–11–6(c), the Wallings must designate evidence which demonstrates that Appel "discarded" solid waste onto their property. They contend that an issue of material fact exists whether Appel discarded the fuel oil when it misdelivered the oil to their house.

### Plain and Ordinary Meaning

■ The term "discarded material" is not defined in the definitions section of Title 13, Article 7. Therefore, we apply the general rule of statutory construction that undefined words and phrases in a statute must be given their plain, ordinary and usual meaning. *See* IND.CODE § 1–1–4–1(1). Words and phrases in a statute are given their plain and ordinary meaning unless they are technical words and phrases having a peculiar and appropriate meaning in the law requiring definition according to their technical import. *See id.* In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Ashlin Transp. Servs., Inc. v. Indiana Unemployment Ins. Bd.* (1994), Ind.App., 637 N.E.2d 162, 167.

Here, as the Wallings note, to discard an item implies the "letting go or throwing away of something that becomes useless, or superfluous though often not intrinsically valueless." *See* Brief of Appellants at 14 (quoting *Webster's 9th New Collegiate Dictionary* at 360 (1985)). "Discard" is also defined as to "throw away" or "reject." *American Heritage Dictionary* at 375 (1981). The designated evidence in this case does not support the reasonable inference that Appel was throwing away fuel oil because it was useless or

superfluous. Rather, the evidence shows that Appel merely delivered some 580 gallons of fuel oil to the wrong house. Therefore, according to the plain and ordinary meaning of the term discarded, Appel did not dump "solid waste" on the Wallings' property.

### Federal Law

We find additional guidance in ascertaining the meaning of "discarded material" from the federal regulatory scheme governing solid waste management. Indiana's solid waste regulations were enacted pursuant to a state solid waste management plan authorized under the Resource Conservation and Recovery Act ("RCRA") and approved by the Environmental Protection Agency ("EPA"). *See* 42 U.S.C. §§ 6942, 6947. Indiana's solid waste management plan must comply with minimum requirements established under RCRA. *See* 42 U.S.C. § 6943.

RCRA is a comprehensive environmental statute under which the EPA is granted authority to regulate solid and hazardous wastes. *See* 42 U.S.C. § 6901 *et seq.; American Mining Congress v. United States Envtl. Protection Agency* (D.C.Cir.1987), 824 F.2d 1177, 1178. Under RCRA, "solid waste" is defined as:

> any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and *other discarded material,* including solid, liquid, semisolid or contained gaseous material, resulting from industrial, commer-

cial, mining, and agricultural operations, and from community activities....

42 U.S.C. § 6903(27) (emphasis added).

The Court of Appeals for the District of Columbia Circuit addressed the meaning of the language "other discarded material" under RCRA in *American Mining Congress.* The issue in that case was whether secondary material recycled and reused within an industry's ongoing production process was "solid waste" subject to the EPA's regulatory authority. *American Mining Congress,* 824 F.2d at 1178. After analyzing both the statutory language at issue and the legislative intent in this area, the court concluded that when Congress used the term "discarded" in the definition of solid waste, it used that term in its ordinary sense to mean "disposed of," "abandoned" or "thrown away." *Id.* at 1185 and 1193. The court in *American Mining Congress* held that material which is recycled and reused, but which has not yet become part of the "waste disposal problem" regulated by RCRA, is not solid waste. *Id.* at 1186.

Thus, in interpreting the RCRA definition of solid waste, which is identical to the Indiana definition of solid waste, a federal court has applied the plain and ordinary meaning of the term "discarded material." "Discarded" solid waste material under RCRA means material which is disposed of, abandoned or thrown away. *Id.* at 1193. We likewise conclude that these ordinary meanings of "discarded" determine whether material is solid waste under Indiana's solid waste management statutes.[1]

---

1. This court is cognizant that "solid waste" is defined differently in the Indiana Administrative Code. Under the administrative rules for hazardous waste management, the term "discarded material" which appears in the definition of solid waste is also specifically defined. *See* IND.ADMIN.CODE tit. 329, r. 3–3–2(a)(1) and (a)(2). However, this more precise definition of solid waste does not apply to the question presented here.

In *Connecticut Coastal Fisherman's Ass'n v. Remington Arms Co.* (2d Cir.1993), 989 F.2d 1305, the federal court of appeals considered the different definitions of "solid waste" used in the solid waste and hazardous waste management chapters of RCRA. The court in *Connecticut Coastal* distinguished between RCRA provisions that have either regulatory or remedial purposes and, thus, require a different definition of solid waste depending upon the statutory context. *Id.* at 1314. Hazardous waste is subject to stringent

regulation and, in recognition of the serious responsibility that RCRA hazardous waste regulations impose, Congress defined the term "discarded material" included within the regulatory definition of solid waste in order to identify clearly what constitutes hazardous waste. *Id.* at 1315. Accordingly, the court in *Connecticut Coastal* concluded that this more precise definition of solid waste was intended to apply only to hazardous waste regulation and enforcement. *Id.*

As we have noted above, Indiana's environmental management scheme also includes two definitions of "solid waste." The definition which includes the meaning of "discarded material" is found in the administrative rules concerning hazardous waste regulation. However, the landowner recovery statute, Indiana Code § 13–7–11–6(c), is not a regulatory statute but has a remedial purpose. Like the Second Circuit in *Connecticut Coastal,* we decline to apply the

In this case, the evidence shows that Appel did not dispose of, abandon or throw away 580 gallons of fuel oil when it mistakenly delivered the oil to the Wallings' residence. Appel was not disposing of waste but was instead attempting to deliver fuel oil for consumption by a customer. Appel did not discard solid waste.

### Legislative Purpose

 Finally, we must ascertain the intent of the legislature when it used the term "discarded material" in the definition of solid waste in Indiana Code § 13–7–1–22. Our foremost objective in construing a statute is to determine and give effect to the intent of the legislature. *Spaulding v. International Bakers Servs., Inc.* (1990), Ind., 550 N.E.2d 307, 309. It is presumed that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Ashlin Transp. Servs., Inc. v. Indiana Unemployment Ins. Bd.* (1994), Ind.App., 637 N.E.2d 162, 166.

The stated purpose of Indiana's environmental management statutes is as follows:

> to provide for evolving policies for comprehensive environmental development and control on a statewide basis; and to unify, coordinate, and implement programs to provide for the most beneficial use of the resources of the state and to preserve, protect and enhance the quality of the environment so that, to the extent possible, future generations will be ensured clear air, clean water, and a healthful environment.

IND.CODE § 13–7–1–1. This general statement of legislative intent does not illuminate the meaning of the term "discarded material" in the definition of "solid waste" for purposes of the Indiana landowner recovery statute. However, our inquiry into the General Assembly's intent in Title 13 may also include consideration of other statutes on the same subject. *See Ashlin Transp. Servs.*, 637 N.E.2d at 167. Therefore, we look to more specific expressions of Congressional intent in enacting RCRA to explain the manner in which the term "discarded material" was in-

tended for use in Indiana's solid waste management statutes.

Consistent with the stated purpose of Indiana's environmental management statutes, Congress enacted RCRA "to promote the protection of health and the environment." 42 U.S.C. § 6902. RCRA was designed to "deal with the ever-increasing problem of solid waste disposal by encouraging the search for and use of alternatives to existing methods of disposal (including recycling) and protecting health and the environment by regulating hazardous wastes." *American Mining Congress*, 824 F.2d at 1184–85. The reach of RCRA was intended to be broad and include:

> not only the waste by-products of the nation's manufacturing processes ... *but also the products themselves once they have served their intended purposes and are no longer wanted by the consumer.* For these reasons the term discarded materials is used to identify collectively those substances often referred to as industrial, municipal or post-consumer waste; refuse, trash, garbage and sludge.

*Connecticut Coastal Fisherman's Ass'n v. Remington Arms Co.* (2d Cir.1993), 989 F.2d 1305, 1314 (quoting H.R.Rep. No. 1491, 94 Cong., 2d Sess. 2, 1976 U.S.C.C.A.N. 6238, 6240) (emphasis in original).

As we have noted above, the designated evidence in this case does not support the reasonable inference that the fuel oil Appel mistakenly delivered to the Wallings' residence had "served [its] intended purpose" and was "no longer wanted" by consumers. *Id.* Rather, the fuel oil had a "known commercial value" and was intended for consumption when delivered to the Wallings, even if they had not requested the oil. *Cf. Head v. Commissioner, Indiana Dept. of Environmental Management* (1993), Ind. App., 626 N.E.2d 518, 524, *trans. denied* ("automobile fluff," consisting of shredded automobile remains, was "discarded" solid waste because it had no known commercial value in its unseparated state). When deliv-

---

more precise, hazardous waste regulatory definition of solid waste to an action brought under a

remedial statute.

ered, the fuel oil was not part of the solid waste disposal problem which RCRA and the Indiana environmental management statutes seek to address.

■ Therefore, we reject the Wallings' contention that Appel was liable under the landowner recovery statute because after Appel "dumped" oil into their basement, the oil no longer possessed any value and became solid waste. The landowner recovery statute provides a private cause of action for a landowner "on whose land garbage or other solid waste *has been* illegally dumped." IND. CODE § 13–7–11–6(c) (emphasis added). Thus, by its terms the statute assumes that the material illegally dumped on land is garbage or solid waste *when it is dumped.* The focus in the landowner recovery statute is on the status of the material at the time it is illegally dumped on the land, not the material's status after it is dumped. The clear design of this statute is not only to provide landowners with a remedy but also to deter illegal disposal of garbage or other solid waste. Simply put, the only construction consistent with the legislative purpose of both Indiana and federal solid waste management statutes is that the fuel oil in this case was not solid waste.

We hold as a matter of law that fuel oil delivered for consumption, even if mistakenly delivered to the wrong residence, is not "discarded" solid waste as defined under Indiana Code § 13–7–1–22. Accordingly, the Wallings have not established the existence of an issue of fact concerning whether Appel illegally dumped "solid waste" on their property to sustain a cause of action under Indiana Code § 13–7–11–6(c). Summary judgment was properly entered for Appel on this claim.

### Issue Two: Indiana Code § 13–7–4–1

■ The Wallings also assert that they have a private cause of action against Appel for a violation of Indiana Code § 13–7–4–1, which states:

No person may do any of the following:

*　　*　　*　　*　　*

(3) Deposit any contaminants upon the land in such place and manner which creates, or which would create, a pollution hazard that violates or would violate a rule

adopted by one (1) of the boards, or deposit or cause or allow the deposit of any contaminants or solid waste upon the land except through the use of sanitary landfills, incineration, composting, garbage grinding, or another method acceptable to the solid waste management board.

The purported basis for the Wallings' claim is Indiana Code § 13–6–1–1, which provides that Indiana residents have standing to sue as private attorneys general for declaratory and equitable relief in the event of significant pollution, impairment or destruction to the environment of Indiana. According to the Wallings, Appel's contamination of their home with fuel oil is a violation of Indiana Code § 13–7–4–1 and is negligence per se, which precludes summary judgment. Again, we cannot agree.

It is true that Hoosiers may bring actions in the name of the state to protect the environment of Indiana. I.C. § 13–6–1–1(a). However, by its express terms, this statute only authorizes actions by citizens *on behalf of the state* for declaratory and equitable relief. The Wallings are not seeking declaratory or equitable relief against Appel on behalf of the State of Indiana. Rather, they seek recovery for their own personal injuries and for property damage to their home. Indiana Code § 13–6–1–1 only permits recourse by citizens for damage to the environment of Indiana, not damage which is personal to particular citizens.

Accordingly, the Wallings' reliance on *Massa v. Peabody Coal Co.* (S.D.Ind.1988), 698 F.Supp. 1446, is misplaced. In *Massa,* the plaintiffs sought damages and injunctive relief against a coal company which conducted mining and blasting activities in Vermillion County. *Id.* at 1447. The plaintiffs alleged violations of environmental regulations governing blasting and air quality and also brought common law claims for nuisance, negligence and trespass. *Id.* The coal company moved for summary judgment and alleged as one ground for its motion that the plaintiffs' suit was barred because of their failure to comply with the notice requirements for a suit under Indiana Code § 13–6–1–1. *Id.* at 1451.

The federal court denied the coal company's motion and observed that because the plaintiffs were not instituting their action in the name of the state pursuant to Indiana Code § 13-6-1-1, no notice was required. *Id.* at 1452. Rather, the court reasoned that the plaintiffs' claims were not barred for lack of notice because:

the plaintiffs allege injury and damage to their persons and property. That is, the plaintiffs herein are alleging personal injury and damage which is distinct from any damage to the environment which might also result from the defendant's conduct. *This statute [Indiana Code § 13-6-1-1] simply cannot be read so expansively as to abolish private causes of action merely because individuals are given standing to file suit in a capacity as a private attorney general in instances where someone's conduct damages the environment.*

*Id.* (emphasis added).

The Wallings seize on this last part of the court's analysis in *Massa* and argue that their suit to recover costs, expenses and attorney's fees incurred to clean up the fuel oil in their home is actionable under Indiana Code § 13-6-1-1. However, the *Massa* decision makes it clear that suits brought by citizens to recover damages for their own personal injury and property damage, as distinct from suits to obtain declaratory and equitable relief for damage to the environment, are not citizen suits on behalf of Indiana. *See id.*

Therefore, it is of no import in this case whether Appel's conduct constituted a violation of Indiana Code § 13-7-4-1 and, thus, gave rise to a suit under Indiana Code § 13-6-1-1 for damage to the environment of Indiana. As shown above, the Wallings' action for personal injury and property damage is not brought on behalf of the State of Indiana and is not a citizen suit under Indiana Code § 13-6-1-1. The Wallings' suit is, in substance, a private cause of action like the suit filed by the plaintiffs in *Massa* which the federal court found was not an action pursuant to Indiana Code § 13-6-1-1. We conclude that the trial court did not err when it entered summary judgment for Appel on the Wallings' claim under Indiana Code § 13-6-1-1 and Indiana Code § 13-7-4-1.

## CONCLUSION

We hold, as a matter of law, that the Wallings have failed to demonstrate a genuine issue of material fact exists for trial on their claims under either Indiana Code § 13-7-11-6(c) or Indiana Code § 13-6-1-1 in Counts III and IV of their complaint. The trial court's entry of summary judgment for Appel on these counts is affirmed.

Affirmed.

ROBERTSON and BAKER, JJ., concur.