**MUTUAL SECURITY LIFE INSURANCE COMPANY, By its Liquidator, Donna D. BENNETT, Appellant–Plaintiff,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellee– Defendant.**

No. 49A02–9506–CV–373.

Court of Appeals of Indiana.

Dec. 27, 1995.

Transfer Denied May 17, 1996.

Fred R. Biesecker, John T. Murphy, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Julia Blackwell Gelinas, Sandra Boyd Williams, Locke Reynolds Boyd & Weisell, Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mutual Security Life Insurance Company ("MSL"), by its Liquidator, Donna D. Bennett (the "Liquidator"), appeals from the grant of summary judgment in favor of Fidelity and Deposit Company of Maryland ("F & D"). F & D provided insurance coverage to MSL under a blanket fidelity bond which insured losses resulting directly from dishonest or fraudulent acts to a limit of $1,000,000. MSL's complaint alleges such losses. F & D moved for summary judgment on the grounds that MSL's claim is barred by the provision in the bond which automatically terminates coverage immediately upon the taking over of the insured by a receiver, liquidator, or by state or federal officials. Following a hearing, the trial court entered summary judgment in favor of F & D.

We affirm.

### ISSUES

MSL presents four issues for our review which we restate as follows:

1. Whether the automatic termination upon takeover provision of the fidelity bond issued to MSL violates the public policy of Indiana.

2. Whether the rider to the bond amended the automatic termination provision and required a 30–day written notice before termination could take effect.

3. Whether the trial court erred by not equitably tolling the discovery period under the bond.

4. Whether the trial court erred by not permitting additional investigation into discovery of losses covered by the bond prior to the takeover by the Liquidator.

## FACTS

MSL is an insurance company incorporated in Indiana. F & D issued a financial institution bond to MSL for a period from January 1, 1990, to January 1, 1991. By its terms, the fidelity bond provides coverage for losses discovered by the insured during the bond period, but it terminates immediately upon takeover by a receiver or other liquidator or by state or federal officials.

On October 5, 1990, the Marion Circuit Court granted a petition filed by the Commissioner of the Indiana Department of Insurance that sought to rehabilitate MSL. The petition included a Consent to Order of Rehabilitation executed by MSL. F & D was notified of a potential claim under the bond by letter dated November 13, 1990.

On December 3, 1990, the Commissioner petitioned for an order of liquidation of MSL. The petition was granted on December 6, 1991. The Commissioner was appointed Liquidator and seeks recovery under the fidelity bond.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing a motion for summary judgment, this court applies the same standard as applied by the trial court. *Walling v. Appel Serv. Co.* (1994), Ind.App., 641 N.E.2d 647, 648–49. Summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). All facts and inferences from the designated evidentiary material are liberally construed in favor of the non-moving party. *Walling*, 641 N.E.2d at 649.

■■■ The construction of a written insurance contract is a question of law for which summary judgment is particularly appropriate. *Pennington v. American Family Ins. Group* (1993), Ind.App., 626 N.E.2d 461, 464. When interpreting an insurance policy, our goal is to ascertain and enforce the intent of the parties as manifested in the contract for insurance. *Lexington Ins. Co. v. American Healthcare Providers* (1993), Ind.App., 621 N.E.2d 332, 335, *trans. denied.* If language in an insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 668. An unambiguous insurance contract must be enforced according to its terms, including those terms that limit the insurer's liability. *Pennington*, 626 N.E.2d at 464.

### Issue One: Automatic Termination Clause

The fidelity bond issued to MSL by F & D applies to losses discovered by MSL, the insured, during the bond period. Section 12 of the fidelity bond provides that the bond shall terminate "as an entirety ... immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials...." The parties do not dispute that the appointment of the Liquidator on October 5, 1990, constitutes the "taking over" of MSL. Although termination pursuant to takeover clauses are not explicitly prohibited by statute, the Liquidator asserts that the provision violates the public policy of this State.

■■■ If there is no statute or rule prohibiting an agreement, the question of whether it is void on public policy grounds is a question of law to be determined from the surrounding circumstances of each case. *See Straub v. B.M.T. by Todd* (1994), Ind., 645 N.E.2d 597, 599. Our supreme court has enumerated the factors to be considered in determining whether contracts not prohibited by statute or clearly tending to injure the public, but nevertheless alleged to contra-

vene public policy, should be enforced. *Fresh Cut, Inc. v. Fazli* (1995), Ind., 650 N.E.2d 1126. These factors are: (1) the nature of the subject matter of the contract; (2) the strength of the public policy underlying the statute; (3) the likelihood that refusal to enforce the bargain or term will further that policy; (4) how serious or deserved would be the forfeiture suffered by the party attempting to enforce the bargain; and (5) the parties' relative bargaining power and freedom to contract. *Id.* at 1130.

■ Whether the automatic termination upon takeover provision in a blanket fidelity bond purchased to satisfy a statutory requirement violates Indiana public policy presents an issue of first impression. In considering the factors identified in *Fresh Cut,* we first recognize that the nature of the subject matter of the insurance contract is a fidelity bond which commonly allocates obligations and risks between the insured and the insurer. Indiana Code § 27–1–7–14 requires that "[a]ll officers and home office employees [of an insurance company] having control of or access to moneys or securities" be bonded against pecuniary loss to the company caused "by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication." MSL relies upon this statute to support its argument that the automatic termination upon takeover clause frustrates the public policy of protecting Indiana insurance policyholders. F & D counters that the statute permits the use of the blanket bond issued by F & D and that the bond language does not conflict with any of the requirements contained in Indiana Code § 27–1–7–14. Additionally, F & D points out that the statute requires that the bond be filed with and approved by the Department of Insurance which "presumably" did approve the bond issued by F & D.

MSL further asserts that the automatic termination upon takeover term violates the Liquidator's mandate to marshall and distribute assets as required by Indiana Code §§ 27–9–3–7 and 27–9–3–13. The result, ar-

gues the Liquidator, is to deny a critical asset to her and to the policyholders of the insolvent company, resulting in additional burdens on Indiana taxpayers. F & D contends that, although the Liquidator has the power to take possession of the assets of MSL, the bond had terminated as of October 5, 1990, the date of the takeover.[1] The Liquidator could not take possession of an asset that did not exist.

Public policy arguments similar to those advanced by MSL were considered and rejected by the Sixth Circuit in *Federal Deposit Ins. Corp. v. Aetna Casualty and Sur. Co.* (6th Cir.1990), 903 F.2d 1073. In upholding the validity of an automatic termination upon takeover provision in a fidelity bond, the court noted:

> Were courts free to refuse to enforce contracts as written on the basis of their own conceptions of the public good, the parties to contracts would be left to guess at the content of their bargains, and the stability of commercial relations would be jeopardized. The power to refuse to enforce contracts on the ground of public policy is therefore limited to occasions where the contract would violate "some explicit public policy" that is "well defined and dominant. . . ."

*Id.* at 1077 (quoting *St. Paul Mercury Ins. Co. v. Duke Univ.* (4th Cir.1988), 849 F.2d 133, 135); *accord California Union Ins. Co. v. American Diversified Sav. Bank* (9th Cir. 1991), 948 F.2d 556 (automatic termination upon takeover provision in fidelity bond not violative of public policy).

MSL argues that the analysis applied by the courts in *California Union* and *Aetna Casualty* is not applicable in the present case because those cases were decided under a statute which in effect approved the use of termination clauses in fidelity bonds. However, the similarity to these cases is stronger than the Liquidator suggests. Indiana Code § 27–1–7–14 provides that the amount and form of an insurance company fidelity bond "shall be approved . . . by the department [of Insurance] and shall be filed with the depart-

---

1. Because we find in favor of F & D, we need not address F & D's argument that the bond actually terminated on August 29, 1990, when Farm and

Home Life Insurance Company, one of eighteen entities listed as insureds in the bond policy, went into receivership.

ment within such time as it may prescribe." The Indiana Department of Insurance should at least be aware of the automatic termination provision in this standard form bond. If the Department had believed that this provision was contrary to Indiana public policy it could have disapproved the bond or brought proposed amendments to the legislature. *See Robbins v. McCarthy* (1991), Ind. App., 581 N.E.2d 929, 932, *trans. denied.*

Although we have not previously addressed the validity of an automatic termination upon takeover clause in a fidelity bond, this court has considered a public policy challenge to a similar clause in a liability policy which excluded from coverage "[c]laims based upon ... insolvency [or] receivership ... of any Insured...." *Lexington*, 621 N.E.2d at 335. In *Lexington*, we rejected an argument that the exclusion was contrary to public policy and noted that "an insured cannot purchase an insurance policy which explicitly excludes claims involving insolvency and reasonably expect the policy to cover claims involving insolvency." *Id.* at 339.

Recent federal decisions support this court's holding in *Lexington* in the context of officers' and directors' liability policies. *See, e.g., American Casualty Co. of Reading, Pa. v. Baker* (9th Cir.1994), 22 F.3d 880, 894 ("every circuit that has considered the exclusion has found it valid and not violative of public policy"); *Federal Dep. Ins. Corp. v. American Casualty Co. of Reading, Pa.* (7th Cir.1993), 998 F.2d 404; *see also* David J. Marchitelli, Annotation, *Validity, Construction, and Effect of 'Regulatory Exclusion' in Directors' and Officers' Liability Insurance Policy*, 21 A.L.R. 5th 292 (1994).

The Liquidator urges that this court decline to follow *Lexington* where the insurance policy in question was not required by law as is the fidelity bond in this case. However, the absence of statutory requirement was only one factor discussed in *Lexington*. The court reasoned that "[o]nly in cases which are substantially free from doubt will we exercise our power to declare a contract void as contravening public policy." *Id.* at 338. Here, we cannot conclude that the pub-

lic policy concerns advanced by MSL are compelling.

Although protection of Indiana policyholders is a legitimate state interest, refusal to enforce the contractual term would only marginally further that policy. In Indiana, member insurance companies are assessed to cover the policyholder obligations of insolvent insurance companies within prescribed limits. *See* IND.CODE §§ 27–6–8–7, 27–8–8–5, 27–8–8–6. Thus, policyholders are protected to a degree despite the lack of bond proceeds available after a takeover.

Further, the forfeiture suffered by bonding companies could be substantial if public policy were used to void automatic termination upon takeover provisions in existing bonds. If such provisions were deemed void, it would alter the risk analysis and the calculation of reserves. A judicial expansion of the scope of coverage would also deprive companies of the bargained-for allocation of risk as reflected in the premium.

Finally, when asked to invalidate a contract provision on public policy grounds, the court must consider the parties' relative bargaining power and freedom to contract. *Fresh Cut*, 650 N.E.2d at 1130; *Lexington*, 621 N.E.2d at 338. The law generally allows competent persons the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are enforced by the courts. *Pigman v. Ameritech Publishing, Inc.* (1994), Ind.App., 641 N.E.2d 1026, 1029. It is in the best interest of the public not to restrict unnecessarily the freedom of contract. *Fresh Cut*, 650 N.E.2d at 1129.

Here, both MSL and F & D were corporations which operated in a competitive environment at arm's length. They knowingly and willingly allocated risks by contract in a form which had been approved by the Department of Insurance. We agree with MSL that there are legitimate interests involved and that the automatic termination upon takeover provision denies the insured the protection of the bond at the very time that it is most needed, i.e., when it cannot pay its policyholder obligations. Nevertheless, in considering the factors enumerated in *Fresh Cut*, we conclude that these concerns do not justify the use of public policy to void this

agreement which unambiguously provides that it terminates automatically upon takeover by the Liquidator.

### Issue Two: Rider

■ MSL next asserts that the bond did not automatically terminate when MSL went into rehabilitation on October 5, 1990. Rather, MSL maintains that the rider to the bond required a 30–day notice before termination could occur. In the alternative, MSL asserts that the rider language is ambiguous and should be construed against F & D. We cannot agree with either contention.

Section 12 of the bond sets out six ways in which the bond can be terminated: (1) by written notice from the underwriter; (2) by written notice from the insured of its desire to cancel; (3) upon the taking over of the insured by a receiver, liquidator, or by state or federal officials; (4) upon the taking over of the insured by another institution; (5) upon exhaustion of the aggregate limit of liability; or (6) upon expiration of the bond period. Section 12 is amended by a rider which reads:

> No cancelation or termination of this policy or bond, as an entirety, whether by or at the request of the Insured or by the Underwriter, shall take effect prior to the expiration of 30 days after written notice of such cancelation or termination has been filed with [the] Indiana Department of Insurance unless an earlier date of such cancelation or termination is approved by said Indiana Department of Insurance.

MSL asks this court to interpret the phrase "termination of this ... bond ... by or at the request of the Insured" to include this case where MSL consented to rehabilitation.[2] This argument is not persuasive. The plain language of the relevant provision in the rider states that, in order to activate the 30–day notice requirement, "cancelation" or "termination" of the "bond" be "by or at the request" of MSL. In fact, MSL has never requested that the bond be terminated. It strains the ordinary meaning of the language

in the rider to conclude that MSL's consent to rehabilitation amounts to a termination or cancellation of the bond "at the request" of MSL.

In *Sharp*, the Fifth Circuit considered termination and notice provisions in a fidelity bond which stated that "no termination or cancelation of this bond ... whether by the Insured or the Underwriter, shall take effect prior to the expiration of ten days...." *Sharp*, 858 F.2d at 1044. The *Sharp* court distinguished between terminations by the insured and terminations by receivership or takeover:

> When termination is by the insured or the underwriter, the other party will necessarily have notice of termination of the contract. In the case of a receivership or takeover, the insurer may never receive notice of any kind.... [The insurer] might inadvertently find itself insuring a risk substantially different from that originally contemplated.

*Id.* at 1046. The court concluded that the plain language of the bond required that it terminate immediately upon the commencement of the conservatorship. *Id.* at 1046; *accord California Union*, 948 F.2d at 560–61 (notice requirement in fidelity bond when termination whether "by the Insured or the Underwriter" did not trigger notice requirement when termination by takeover).

Following *Sharp* and *California Union*, we find the language of the rider unambiguous and its notice requirement inapplicable to these circumstances where the termination resulted from the takeover by the Liquidator.

### Issue Three: Equitable Tolling

MSL next argues that the trial court should have equitably tolled the discovery period under the F & D bond because James M. Fail dominated MSL so as to preclude it from discovering losses covered by the bond. We cannot agree.

---

2. The Consent To Order of Rehabilitation, dated October 3, 1990, states:

Charles D. Casper, President of Mutual Security Life Insurance Company ("Mutual Security"), pursuant to a resolution duly adopted by the

Board of Directors of Mutual Security, does hereby for and on behalf of Mutual Security:
1. Request and consent to rehabilitation under Indiana Code Article 27–9....

Initially, we recognize that the remedy at issue is equitable in nature. Generally, particular deference is given to the judgment of the trial court where the proceeding sounds in equity and such judgments are clothed in a presumption of correctness. *Donavan v. Ivy Knoll Apartments Partnership* (1989), Ind.App., 537 N.E.2d 47, 50. Here, the trial court ruled on the issue by granting summary judgment. The record does not indicate that the trial court foreclosed equitable tolling as a matter of discretion. Rather, the court found that equitable tolling was unavailable as a matter of law. We thus apply the de novo standard of review to that determination in this case. *See Federal Deposit Ins. Corp. v. Dawson* (5th Cir.1993), 4 F.3d 1303, 1308, *cert. denied,* — U.S. —, 114 S.Ct. 2673, 129 L.Ed.2d 809 (court of appeals upheld district court's summary judgment which determined equitable tolling was unobtainable as a matter of law).

The adverse domination doctrine is based upon the premise that a corporation is so controlled by directors or officers engaged in wrongdoing that discovery of the misconduct is impossible. Therefore, the period for discovery of losses should be equitably tolled until the wrongdoers no longer control the entity.[3]

As evidence of adverse domination, MSL states that Fail, an executive officer of MSL, owned 100% of Lifeshares Group, Inc. which owned 89% of NPL corporation. NPL, in turn, owned 100% of MSL. The Liquidator fails to provide a legal or factual basis for her assertion that mere ownership of the corporation through ownership of affiliated companies rendered discovery of losses by other employees impossible. Although shareholders elect directors and vote on extraordinary matters, officers and other employees of the corporation are primarily responsible for the day-to-day operations of the organization. The record before this court fails to indicate that the alleged dishonest acts were not sus-ceptible to discovery. Due to MSL's failure to designate facts to show adverse domination, we need not reach the issue of whether the theory should apply to the discovery of loss provision. *Cf. INB Nat'l Bank v. Moran Elec. Serv., Inc.* (1993), 608 N.E.2d 702, *trans. denied* (use of "presidential domination" theory to toll statute of limitations held clearly erroneous); *Resolution Trust Corp. v. O'Bear* (N.D.Ind.1993), 840 F.Supp. 1270, 1284–85 (district court denied motion to dismiss on "supposition" that an Indiana court, faced with facts outlined in complaint, would apply the adverse domination doctrine to equitably toll a statute of limitations).

An analogous case is *California Union* where the Ninth Circuit, applying California law, considered a discovery of loss period in a fidelity bond. On appeal from the grant of summary judgment, the court held that the discovery period was not equitably tolled by reason of the wrongdoing officers' control of the bank. *California Union,* 948 F.2d at 565 ("it is not controverted that there were non-wrongdoing employees who could have discovered the losses prior to takeover"). The court noted:

> "Generally, the courts have strictly enforced such [discovery of loss] provisions so that neither difficulty in discovering insured losses nor employee concealment excuse[s] the insured's performance."

*Id.* (quoting *Admiralty Fund v. Peerless Ins. Co.* (1983), 143 Cal.App.3d 379, 191 Cal.Rptr. 753, 756); *see also* 11B *Appleman, Insurance Law and Practice* § 6979, at 473, 475 (1981) (generally appointment of receiver does not enlarge the time for discovery of losses even though there may have been difficulty preventing discovery); *cf. Admiralty Fund,* 191 Cal.Rptr. at 753 (managers of mutual funds dominated funds making discovery of loss impossible; remand to trial court).

In this case, the reasoning of *California Union* applies. Based on the designated evi-

---

**3.** Two competing theories have developed with respect to the plaintiff's burden in establishing adverse domination of a corporation. Under the "complete domination" test, the plaintiff who seeks to use adverse domination to toll a statute of limitations must show "full, complete and exclusive control in the directors or officers charged." Under the second or "majority test" the plaintiff must show only that a majority of the board members were wrongdoers during the period the plaintiff seeks to toll a statute of limitations. *See Federal Deposit Ins. Corp. v.*

dence there is insufficient evidence as a matter of law to support an inference and determination that the discovery period should be equitably tolled. The trial court did not err.

### Issue Four: Pre-takeover Discovery

MSL argues that summary judgment was premature on the issue of pre-takeover discovery in that, at the time of the summary judgment hearing, the Liquidator was not in a position to state definitely whether there had been "discovery" of covered losses by MSL prior to October 5, 1990.[4] We disagree.

F & D's request for admission stated:

*Request No. 9:* The loss for which a claim is presently being made, was not discovered by the insured as defined under the bond, prior to October 5, 1990.

MSL responded:

Plaintiff can neither admit nor deny Request No. 9. Plaintiff is still investigating whether any loss or potential loss for which a claim is presently being made under Bond No. 607–09–90–2 was discovered by [MSL] prior to [MSL's] being placed into receivership. Plaintiff has and continues to make reasonable inquiry and the information known to the plaintiff is insufficient to enable it to admit or deny this request at this time.

MSL contends that its investigation into this issue has been hindered by "an effective hold" on discovery proceedings in a related case now pending in federal court.

■■■ The trial court is vested with broad discretion in ruling on pre-trial inquiry under Indiana Trial Rules 26 through 37 and we will reverse only upon a showing of an abuse of discretion. *Corll v. Edward D. Jones & Co.* (1995), Ind.App., 646 N.E.2d 721, 723. Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal. *ConAgra, Inc. v. Farrington* (1994), Ind.App., 635 N.E.2d 1137, 1143. Discovery, "like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor,* 329 U.S.

495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451, 460 (1947). It is within the discretion of the trial court to place bounds on the duration of discovery. *Coster v. Coster* (1983), Ind.App., 452 N.E.2d 397, 400.

■■■ MSL correctly asserts that it is generally improper to grant summary judgment when requests for discovery are pending. *See Ludwig v. Ford Motor Co.* (1987), Ind.App., 510 N.E.2d 691, 699–700, *trans. denied; Roark v. City of New Albany* (1984), Ind.App., 466 N.E.2d 62, 66. However, when pending discovery is unlikely to develop a genuine issue of material fact, summary judgment may be granted. *Diaz v. Carpenter* (1995), Ind.App., 650 N.E.2d 688, 692.

■■■ This action was commenced by the Liquidator on December 31, 1992. Requests for admissions and interrogatories were submitted to the Liquidator on July 13, 1993. The Liquidator responded on September 13, 1993, and F & D filed its motion for summary judgment on August 29, 1994, nearly a year later. Over two years passed between the filing of this suit and the entry of summary judgment.

Indiana Trial Rule 56(F) authorizes but does not require a trial court to order a continuance to permit further discovery. The trial court did not err when it declined to allow the Liquidator further time to develop a genuine issue of material fact concerning the knowledge of the insured prior to the automatic termination of the bond.

### CONCLUSION

MSL has not met its burden of demonstrating that the automatic termination upon takeover provision of the fidelity bond issued by F & D violates the public policy of Indiana. Further, the 30–day notice requirement in the rider is not applicable in this case where the bond was not terminated by or at the request of MSL. The trial court did not err when it declined to toll the discov-

---

*Dawson* (5th Cir.1993), 4 F.3d 1303, 1309–10 (citations omitted).

**4.** Section 3 of the bond states that "[d]iscovery occurs when the Insured first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known."

ery period under the bond. Neither did the court abuse its discretion when it declined to permit MSL additional time to investigate whether there were covered losses actually discovered prior to takeover.

Affirmed.

KIRSCH, J., concurs.

BAKER, J., concurs in result with separate opinion.

BAKER, Judge, concurring.

I concur in result but I am compelled to write separately. I disagree with the majority's determination in Issue I that the automatic termination upon takeover provision of the fidelity bond does not violate public policy; however, the Indiana Department of Insurance specifically approved of the language in the bond issued by F & D. Thus, because the Commissioner of the Department of Insurance was appointed Liquidator and seeks recovery under the fidelity bond, I believe the Indiana Department of Insurance is estopped from challenging the validity of the automatic termination upon takeover provision of the fidelity bond.